Danny Ray Holton was convicted of selling cocaine and was sentenced to 21 years in prison. The Court of Criminal Appeals affirmed his conviction, 590 So.2d 914, and Holton petitioned this Court for certiorari review. Holton claims that the opinion of the Court of Criminal Appeals conflicts with prior decisions of that court and of this Court on all four issues addressed by the Court of Criminal Appeals. We granted certiorari review to examine two of those issues — whether the State sufficiently proved the chain of custody of the cocaine allegedly sold by Holton to Alcoholic Beverage Control Board Officer Yvonne Bedgood, and whether Holton must present evidence that he does not have a scar before this Court can consider the issue of lack of proper identification. For a complete statement of the facts and a discussion of the issues not addressed here, see Holton v. State, 590 So.2d 914
(Ala.Crim.App. 1990).
 I.
Holton argues that the State failed to prove a sufficient chain of custody in order admit into evidence the cocaine allegedly sold to Bedgood by Holton. At trial, the State presented the following testimony: Bedgood testified that she had received the cocaine from Holton. She testified that she put the cocaine into a plastic bag, which, she said, she put into an envelope. She testified that she sealed the envelope and put her initials on it and then turned the envelope over to Governor Jackson, a narcotics investigator with the Dothan Police Department.
Jackson testified that he put tape over the seams of the envelope and that he also initialed the envelope. He further testified that he put the envelope in the police locker, to which only he had access. He testified that he later gave the envelope to Ray Owens, a Dothan police officer, to transport to the forensic laboratory. He stated that the envelope was in the same condition when he gave it to Owens as it was when he placed it in the locker.
The next person to testify was Joe Saloom, the director of the forensic laboratory in Enterprise. He testified that he had received the item from Owens and that when he received the envelope, it was sealed. Owens did not testify.
Holton argues that Owens's testimony is an essential link in the State's chain of custody and that, without such testimony, the cocaine was inadmissible. The State contends that the lack of testimony from Owens merely "weakens" the chain and creates a question of credibility, rather than one of admissibility.
This opinion sets forth an analysis to be followed in deciding whether a proper chain of custody has been shown. We have held that the State must establish a chain of custody without breaks in order to lay a sufficient predicate for admission of evidence. Ex parte Williams, 548 So.2d 518, 520
(Ala. 1989). Proof of this unbroken chain of custody is required in order to establish sufficient identification of the item and continuity of possession, so as to *Page 920 
assure the authenticity of the item. Id. In order to establish a proper chain, the State must show to a "reasonable probability that the object is in the same condition as, and not substantially different from, its condition at the commencement of the chain." McCray v. State, 548 So.2d 573, 576
(Ala.Crim.App. 1988). Because the proponent of the item of demonstrative evidence has the burden of showing this reasonable probability, we require that the proof be shown on the record with regard to the various elements discussed below.
The chain of custody is composed of "links." A "link" is anyone who handled the item. The State must identify each link from the time the item was seized. In order to show a proper chain of custody, the record must show each link and also the following with regard to each link's possession of the item: "(1) [the] receipt of the item; (2) [the] ultimate disposition of the item, i.e., transfer, destruction, or retention; and (3) [the] safeguarding and handling of the item between receipt and disposition." Imwinklereid, The Identification of Original,Real Evidence, 61 Mil. L.Rev. 145, 159 (1973).
If the State, or any other proponent of demonstrative evidence, fails to identify a link or fails to show for the record any one of the three criteria as to each link, the result is a "missing" link, and the item is inadmissible. If, however, the State has shown each link and has shown all three criteria as to each link, but has done so with circumstantial evidence, as opposed to the direct testimony of the "link," as to one or more criteria or as to one or more links, the result is a "weak" link. When the link is "weak," a question of credibility and weight is presented, not one of admissibility.
In this case, Owens failed to testify as to his action regarding the envelope. However, the record reflects his receipt of the item; he received the item from Jackson, who testified that he had given the envelope to Owens. Also, Owens's ultimate disposition of the item appears in the record through the testimony of Saloom, who testified that he received the item from Owens. Therefore, the only criterion left to analyze is the handling and safeguarding by Owens. Again, Owens did not testify; thus, there is no direct evidence of his handling of the item. However, both Jackson and Saloom testified that the envelope was sealed when given to and when taken from Owens. A sealed envelope was adequate circumstantial evidence to establish the handling and safeguarding of the item by Owens to treat the item as authenticated. Although the lack of Owens's direct testimony "weakens" the chain, the testimony of Jackson and Saloom prevented a break in the chain. The cocaine was properly admitted by the trial court, and the jury could decide how much weight to give the evidence, given the lack of direct testimony from Owens.
This opinion has presented an approach for analyzing chain-of-custody problems. In this case, the chain of custody was sufficient to authenticate the item, allowing the envelope containing the cocaine to be entered into evidence. Circumstantial evidence is generally sufficient to authenticate the item sought to be entered into evidence, except when there appears to be evidence that the item of evidence was tampered with or that a substitution was made while the item was in the custody of the link who has failed to appear and testify. In this case, there is no suggestion that Owens tampered with or made a substitution as to the item he was to deliver. Thus, we hold that as to the envelope containing the cocaine the State established a chain of custody sufficient to authenticate that item. The Court of Criminal Appeals properly decided the issue regarding the chain of custody.
 II.
The second issue we address is the sufficiency of the in-court identification of Holton by Bedgood. Bedgood testified that she had described the man who had sold her the cocaine as having a scar over his right eye. At Holton's trial, she identified him as the man who had sold her the *Page 921 
cocaine. In reviewing Holton's conviction, the Court of Criminal Appeals stated:
 "The record reveals that [Holton] did not present any evidence during the trial. Thus, he did not present any evidence concerning the presence or absence of a scar."
Holton, in his petition for certiorari review, stated that the opinion of the Court of Criminal Appeals conflicts with his constitutional right against self-incrimination. He argues:
 "By rendering such ruling the appellate court has in effect created a requirement that an accused take the witness stand to describe his [face] to the jury in a case where facial characteristics have a bearing on identification."
The Court of Criminal Appeals misstated the respective burdens of the State and a criminal defendant. The State must prove, beyond a reasonable doubt, that a crime was committed and that the defendant committed it. This includes identification. The criminal defendant has the burden of meeting the State's evidence or suffering the consequence of conviction. The defendant is required to preserve on the record errors at trial sufficient for appellate review.
In this case, the alleged error is the identification by Bedgood of Holton as the man who sold her cocaine. Bedgood identified Holton in court and testified that, when he sold her the cocaine, she observed him in good lighting and at a relatively close distance. On cross-examination, Holton's attorney asked Bedgood about her prior identification and her statement that the man who sold her the cocaine had a scar over his right eye.
 "Q. And did you give him a description of Danny Ray Holton?
"A. Yes, sir.
"Q. What was that description?
 "A. I described him as approximately six feet/six feet two, approximately two hundred and forty plus, scar over the right eye.
"Q. Scar on the right eye?
"A. Right eye.
"Q. Would you show me where that scar is?
"A. (Witness indicating.) There are scars.
"Q. Where are they? Show me.
"A. You can't see?
"Q. No.
"A. There are scars here.
"Q. Would you show the jury where the scars are?
"A. Right here (indicating).
"Q. Put your finger on the scar.
"A. It was here.
"Q. You saw those?
 "A. Yes. I'm standing as close to him as I was then."
In his brief before this Court, Holton stated:
 "The truth is that the Defendant was seated in front of the jury throughout his trial. The jury saw his face. There was, therefore, no need to enter any evidence into the record concerning the absence of such a scar."
We hold that the cross-examination of Bedgood regarding the scar and the fact that the defendant was seen by the jury are sufficient to preserve for review the issue of Bedgood's identification of Holton. However, they are also sufficient to answer that issue. It is fundamental that the issue of identification of a defendant by a witness is a question to be resolved by the jury where, as here, the evidence has met the legal test of admissibility. Bedgood, during her direct examination, positively identified Holton as the man who had sold her the cocaine. She described her opportunity to see and observe him when the sale of cocaine took place and said that she observed him on that occasion at a close distance in good lighting and for a sufficient amount of time.
The lack of a scar on Holton, as he sat before the jury during the trial, was not offered into evidence by him except through Holton's cross-examination of Bedgood. His cross-examination on this issue was intense and thorough. It was a trial tool skillfully utilized by Holton to create a *Page 922 
doubt in the mind of the jury regarding Bedgood's positive, direct testimony of identification. At this stage of the trial, its office was not to prevent the admissibility of Bedgood's identification, but to shadow its credibility. Therefore, the Court of Criminal Appeals properly decided this issue.
For the reasons stated above, the judgment of the Court of Criminal Appeals is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.
 *Page 143