629 So.2d 43 (1993)
Spencer Owen ZIGLAR
v.
STATE.
CR-90-1321.
Court of Criminal Appeals of Alabama.
May 7, 1993.
On Applications for Rehearing July 9, 1993.
Certiorari Denied October 29, 1993.
*45 Stafford Pittman, Jr. and Roger Brannum, Enterprise, and Charles R. Driggars and L. Dan Turberville, Birmingham, for appellant.
James H. Evans, Atty. Gen., and Randall McNeill, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 1921602.
MONTIEL, Judge.
The appellant, Spencer Owen Ziglar, was charged with murder for intentionally causing the death of Edward Lamar Kelley by shooting him with a shotgun, in violation of § 13A-6-2, Code of Alabama 1975. The jury found the appellant guilty of the lesser included offense of manslaughter. A sentencing hearing was held and the appellant was sentenced to 20 years at hard labor of at least 60 hours per week. The appellant was ordered to pay a fine of $10,000, court costs, attorney fees, restitution, and a fee to the Victims' Compensation Fund.
A complete recitation of the facts of this case is unnecessary. Only those facts which are pertinent to the issues raised on appeal are addressed.

I
The first issue is whether the trial court erred in compelling the appellant's alleged wife to testify when she had invoked the marital privilege.
Before trial, a question was raised as to whether the appellant was married and if so, whether his spouse could be compelled to testify as a State's witness. The appellant had filed a complaint seeking a divorce, but no action had been taken by his wife in response to the complaint. Thus, the appellant had filed an application for the entry of a default judgment in his divorce action. Several months later, the appellant's wife wrote the circuit court, requesting a final judgment. After it had received the letter, the court noted on the case action summary sheet: "Motion for a Final Decree is granted. The Court will not prepare the judgment." No testimony or other evidence was presented to the court. The court did not order a final judgment of divorce.
The court in which the appellant's criminal trial was pending concluded that the appellant was divorced. Therefore, the court ruled that the appellant's former spouse could be compelled to testify as a State's witness over the appellant's objection and the former spouse's invoking the marital privilege.
We hold the trial court erred in determining that, for purposes of invoking the marital privilege, the appellant and his wife were divorced. Rule 55(e), Ala.R.Civ.P., states, in relevant part: "Proof Required Despite Default in Certain Cases. No judgment by default shall be entered ... to a suit for divorce ... unless the claimant establishes his claim or right to relief by evidence." Rule 43(a), Ala.R.Civ.P., states in part:
Testimony in an uncontested action involving a divorce or annulment of marriage shall be taken before the clerk, unless otherwise ordered by the judge. In such a case, the clerk shall have the powers of a master as provided in Rule 53 and shall follow the procedure therein, or in cases of default or upon written waiver the testimony may be taken upon deposition on oral examination, in accordance with prior practice, and at any time and without notice of the time and place of the taking or other proceedings therein.
It is imperative that jurisdictional facts appear in the record in order for a court to grant a divorce. Johns v. Johns, 49 Ala.App. 317, 271 So.2d 514 (1973).
In this case, neither the appellant nor his wife established his or her claim or right to a divorce by any evidence. Thus, the court in which the divorce action was pending had no evidence before it and no jurisdictional authority to render a final judgment of divorce.
Because we conclude that the appellant and his wife were not divorced, we now turn to the issue of whether the trial court erred to reversal in compelling the appellant's wife to testify despite her invocation of the marital privilege not to testify and the appellant's objection. The State argues that *46 even if the appellant and his wife were not divorced, admitting the wife's testimony was harmless error because her testimony was cumulative and because, if there was any harm, it was to the wife and not the appellant. We disagree.
The law is very clear that a witness cannot be compelled by the State to testify against his or her spouse. § 12-21-227, Code of Alabama 1975; Holyfield v. State, 365 So.2d 108, 112 (Ala.Crim.App.), cert. denied, 365 So.2d 112 (Ala.1978). The marital privilege not to testify against one's spouse belongs to the spouse whose testimony is sought. Id. Until the spouse elects to testify and has waived the privilege not to testify, the spouse is not a competent witness. Ex parte Billingsley, 402 So.2d 1060 (Ala.1981), cert. denied, 465 U.S. 1023, 104 S.Ct. 1276, 79 L.Ed.2d 681 (1984); Arnold v. State, 353 So.2d 524, 526 (Ala.1977) (citing De Bardeleben v. State, 16 Ala.App. 367, 77 So. 979, cert. denied, 201 Ala. 523, 78 So. 877 (1918)).
Here, the appellant's wife never waived her privilege not to testify against her husband, and, thus, was not a competent witness. We cannot hold that compelling the wife to testify, when she invoked the privilege not to testify constitutes harmless error to the appellant. In his brief to this Court, the appellant aptly notes pertinent portions of the wife's testimony that were not cumulative. As well, in pretrial proceedings, the prosecution represented that the appellant's wife was an essential witness, and it went to great lengths to procure her testimony. The prosecution sent an investigator to Florida, where the appellant's wife was living, to bring her back to Alabama to testify before the grand jury.
We have held that § 12-21-227, Code of Alabama 1975 (permitting a spouse to elect not to testify) was drafted so as to prevent coercion by others that could directly or indirectly push a spouse onto the witness stand. Holyfield, 365 So.2d at 112. The testimony of a spouse is not admissible unless the spouse first elects to become a witness. Jordan v. State, 30 Ala.App. 313, 5 So.2d 110 (1941).
In De Bardeleben v. State, 16 Ala.App. 367, 77 So. 979, 980 (1918), the Court of Appeals held that reversible error occurred when the trial court compelled the wife to testify against her husband, over the wife's objection and the objection of the husband/defendant. The Court rejected the contention that no error ensued when his wife was forced to testify. Id. In this case, we uphold the principle that reversible error occurs when a spouse is compelled to testify when he or she has invoked the privilege not to testify and the defendant/spouse timely objects. The wife was not a competent witness, and the admission of her testimony constitutes error.
Because the judgment must be reversed and the case remanded for a new trial, we pretermit discussion of some issues raised by the appellant. We address only those remaining issues that may be pertinent upon a retrial of this cause.

II
The appellant argues that the trial court erred in admitting certain physical evidence because the State allegedly failed to establish the proper chain of custody. Specifically, the appellant argues that a spent shotgun shell, wadding, glass fragments, a shotgun and a pistol recovered from the appellant's automobile, three shotgun shells from the appellant's shotgun, were all inadmissible. We disagree.
The Alabama Supreme Court has held that proof of an unbroken chain of custody must be established to a reasonable probability by the party offering the physical evidence that the object sought to be introduced into evidence is in the same condition as, and not substantially different from, its condition at the beginning of the chain. Ex parte Holton, 590 So.2d 918, 919-20 (Ala. 1991). Each person, or "link," who handled the item must be identified, and the record must show the following with regard to each link's possession of the item: "(1) [the] receipt of the item; (2) [the] ultimate disposition of the item, i.e., transfer, destruction, or retention; and (3) [the] safeguarding and handling of the item between receipt and disposition." Id. at 920 (quoting Imwinklereid, The Identification of Original, Real Evidence, 61 Mil.L.Rev. 145, 159 (1973)). The *47 proffering party may show the three criteria for each link by circumstantial evidence, which creates a weak, but not a missing, link, and which does not affect admissibility of the object. Id. A weak link presents a question of credibility and weight rather than admissibility. Id.
In this case, one link in the chain was unavailable to testify. However, the shotgun, the spent shotgun shell, the three live shells, and the pistol, were all identified by the officers who retrieved them. Furthermore, an investigator testified that these items were retrieved on the night of the offense from the appellant's vehicle under his direction and control. There was testimony as to the identity of each individual who was in possession of the items while they were in the chain of custody and how each individual came into possession of the items. There was also testimony that the items were in substantially the same condition when offered into evidence as on the night they were recovered. With regard to these objects, the prosecution established each link and the three criteria for each link.
The appellant's argument with regard to the glass fragments and wadding is not preserved for our review. When the State introduced these items, defense counsel said that he had no objection to their being admitted into evidence. When a timely objection at the time of the admission of the evidence is not made, the issue is not preserved for this Court's review. Goodson v. State, 540 So.2d 789 (Ala.Crim.App.1988).

III
The appellant also argues that a summary of his tape-recorded statement made during an interrogation should not have been admitted into evidence and that the trial court erred in overruling his motion to suppress that statement. Specifically, the appellant asserts that the statement was obtained in violation of the Miranda rule and that, therefore, it was not voluntary, because, he says, he had not waived his rights.
Before the appellant was asked any questions about the alleged crime, the following conversation occurred between the appellant and an investigating officer:
"DEVANE: ... Owen. Uh, Chief Freddy Hanchey of the Elba Police Department, Dwight Holley with the District Attorney's Office, and Bruce DeVane with the District Attorney's Office, and uh, Mr. Owen Ziglar, uh, is present with us. Uh, Owen, prior to this conversation approximately 30 to 40 minutes ago, you and I talked, and I asked you for your consent to ... to uh, uh, search your vehicle ... look inside your vehicle and take items. And, and I told you I was gone [sic] take your car down here and uh, that I needed the shotgun out of it, and I need to take a look at the tires. You `mem ...
"ZIGLAR: True.
"DEVANE: And wasn't any problem with that. And, uh, now, I do not smell any alcohol on you, Owen, but I ...
"ZIGLAR: ... (unintelligible)....
"DEVANE: ... [U]h, uh, you told me that you had five beers.
"ZIGLAR: Four or five beers. And ...
"....
"ZIGLAR: Since late this afternoon.
"....
"DEVANE: And you're ... you ... you're not drunk.
"ZIGLAR: No sir.
"DEVANE: And earlier, you indicated that you wanted to talk with me, but I told you, Owen, that, uh, and you ... that there were certain rights that you have, and I've got and everybody else has across this country, and it's ... you told me they were Miranda rights ... you even knew that. So, and they're also Constitutional rights. And that is the right to remain silent, that anything you say can be used against you in a court of law, the right to an attorney, if you can't afford one the court would appoint one, if you decide to talk with me, uh, you still have the right to stop talkin' at any time you want to stop talkin'. Now, do you understand those rights, Owen?
"ZIGLAR: I think so, yes sir.
"DEVANE: All right, is `ey any question that ... that you have of any one of those rights?

*48 "ZIGLAR: No, I'm not sure, but I don't think so.
"DEVANE: Okay.
"ZIGLAR: Like I said though, I'm not positive, but I ... I'm not ... I don't think I have any questions at this point in time.
"DEVANE: Okay.
"ZIGLAR: Do you have any?
"DEVANE: No, I'd ... my question is, Owen, uh, to insure that ... you do understand what I'm talking about. And....
"ZIGLAR: I think I understand what you're talkin' about.
"DEVANE: All right sir. And if you ... if you've got any question about any of `em, uh, I'll try to go ... you know, explain it, uh, uh, more than I already have. I'll attempt to do that. But, before, uh, you and I can talk, or the four of us sitting here can talk, uh, you have to acknowledge and waive those rights and talk with me. And that means you wanna go ahead and talk with me which you indicated a little bit ago, Owen, is that ... am I....
"ZIGLAR: I don't mind talkin' to you. I don't want to waive my rights that I have as an American citizen ... or as a law-abiding citizen.
"DEVANE: Well....
"ZIGLAR: Or as a citizen of this county or the city of this state. I don't think I should have to waive those rights to talk to anyone.
"DEVANE: Well, that ... I think what it... I want to make sure that we're on the same level at ... it's not that you gone [sic] give up those rights permanently. It means that you will ... that I can't force you to talk, Owen. I'm not gone [sic] attempt to force....
"ZIGLAR: Oh, I'm gone [sic]....
"DEVANE: ... you to talk.
"ZIGLAR: I understand that.
"DEVANE: Uh, and you have the right not to talk. But you also have the right to talk to me if you want to.
"ZIGLAR: I don't mind talkin' to you at all.
"DEVANE: And you got the right to a lawyer ... one ... one appoint ... one will be appointed for you if you can't afford one.
"ZIGLAR: Well, I told you earlier I couldn't afford one.
"DEVANE: Well, the court will make that determination.
"ZIGLAR: So I understand.
"DEVANE: Well, you've got some idea how the courts work, haven't you, Owen? You've served on juries, I believe, haven't you?
"ZIGLAR: I've served on a jury, but I don't really understand how the court works, no, sir.
"DEVANE: Okay.
"ZIGLAR: I mean I'm not that....
"DEVANE: And....
"ZIGLAR: ... up....
"DEVANE: ... and....
"ZIGLAR: ... to date on jurisprudence.
"DEVANE: Okay. And prior to us turning on the tape, you told me you served as a public official for ... for the City of Elba in that you....
"ZIGLAR: I did. Yes I did.
"DEVANE: ... served on the city council some 14 years?
"ZIGLAR: I think that's right ... 14 or 16 years, some'n like that.
"DEVANE: And then ... also served a term as mayor.
"ZIGLAR: Yes, I did ... a short ... it wasn't a full term. It was a short term... (unintelligible)....
"DEVANE: Okay. What....
"ZIGLAR: And I think, you know, the people here are familiar with that. The people in Elba are familiar with that.
"DEVANE: Let me ask you this, Owen. When ... when I'm sayin' you gotta waive those rights, do ... are thinkin' I'm sayin' you gotta give `em up?
"ZIGLAR: Yeah. [that's] exactly what you said. I have to waive `em, when I waive `em, I waive `em ... it's up, they gone ... over and done with. [That's] what I thought you said, yes.
"DEVANE: ... I mean to set `em aside for the time period that we're talking.

*49 "ZIGLAR: Well, I'm....
"DEVANE: You have any problem with that?
"ZIGLAR: Yeah, I ... I don't set my rights or anybody at anytime. It, you know....
"DEVANE: But....
"ZIGLAR: ... for any time period. [That's,] that's sorta....
"DEVANE: ... but you under[stand]....
"ZIGLAR: I mean you can't set `em aside and pull `em back, you know. You either tell the truth or you don't.
"DEVANE: Well, it hadn't got anything to do with tellin' the truth, Owen. It's....
"ZIGLAR: Well, yeah it does, too.
"DEVANE: It's not ... not your rights. And not, you know, waiving those rights. Uh....
"ZIGLAR: Like I said, I don't mind talkin' to you at all. I'd ju[st] ... I'll set here and talk to you....
"DEVANE: Well....
"ZIGLAR: ... all night long.
"DEVANE: ... [Y]ou've told me that several times you want to talk to me.
"ZIGLAR: Yeah, I do. And I'm jist [sic], you know....
"....
"ZIGLAR: What is it you want to know?
"DEVANE: I want to know your whereabouts tonight. I want to know if you been out to Edward Kelley's house or his trailer tonight. I want to know if you killed Edward Kelley tonight. I want to know where ... if you been to Opp, Alabama tonight.
"ZIGLAR: I been to Opp, Alabama, tonight.
"DEVANE: Le ... lemme go back to something, now. Do you understand those rights that I gave you?
"ZIGLAR: Yeah.
"DEVANE: And you want to talk to me?
"ZIGLAR: Sure, I want to talk to you. I....
"DEVANE: Well,....
"ZIGLAR: ... don't mind talkin' to you at all.
"DEVANE: Have I forced you, coerced you or any way to git you to talk wi' me?
"ZIGLAR: No, you have not.
"DEVANE: Well, I'm [going to] go ahead. He ... understands [them] and wants to talk to me.
"ZIGLAR: Don't mind talkin' to you."
We hold that the trial court was correct in denying the motion to suppress the appellant's statement. This Court must determine, looking at the totality of the circumstances, whether the appellant gave an intelligent and knowing waiver of his rights when he made his statement. Rogers v. State, 417 So.2d 241, 248 (Ala.Crim.App.1982). Whether the accused has effectively waived his rights depends upon the underlying facts and circumstances of each case, including the background, experience, and conduct of the accused. Bertarelli v. State, 585 So.2d 212 (Ala.Crim.App.1991).
In this case, when the appellant first indicated that he would not waive his rights, the investigator explained his rights to him again. The investigator made certain that the appellant understood his Miranda rights. The appellant clearly stated that he understood his rights and even told the investigators that he would talk to them "all night long." Looking at the totality of the circumstances, and given the appellant's background and experience, we conclude that the appellant gave the statement with a knowing and intelligent waiver of his rights.

IV
The appellant further contends that the trial court erred in admitting into evidence the items found in his vehicle, at his residence, and on his person because, he says, the items were the product of an illegal search and seizure. Specifically, the appellant contends that the officers had no search warrant and that he had not waived his rights by consenting to the search. We find this argument to be without merit.
The law is clear that consent to a search eliminates the need for a search warrant. Dixon v. State, 476 So.2d 1236, 1238 (Ala.Crim.App.1985) (citations omitted). Prior *50 to any search, the appellant was informed of his Miranda rights and was told that he did not have to consent to the search. Nevertheless, the appellant, according to the investigator, consented to the search. The appellant's tape-recorded statement also reflects that he consented to the search and consented to the taking of physical evidence by the officers. Thus, we hold that the evidence seized was incident to a lawful consensual search and was therefore admissible.
The judgment of the trial court is due to be reversed and this cause remanded for a new trial.
REVERSED AND REMANDED.
All the Judges concur.

ON APPLICATIONS FOR REHEARING
MONTIEL, Judge.
On May 7, 1993, this court reversed the appellant's conviction for manslaughter and remanded the case for a new trial because the trial court had compelled the appellant's wife to testify against the appellant despite the invocation by the wife of her spousal privilege not to testify and the appellant's objections. The State argues in its application for rehearing that compelling the wife to testify was harmless error. This issue, however, was discussed in our opinion.
The appellant also filed an application for rehearing. Because some of his arguments address evidentiary matters that are likely to be issues on retrial, we discuss those arguments in this rehearing opinion.

I
First, the appellant argues that this court erred in holding that a shotgun shell and the appellant's shotgun were properly admitted into evidence over the appellant's objection that the chain of custody as to these items was improper. Specifically, the appellant argues that the State did not establish the methods used to safeguard and handle these items of evidence. There was evidence presented that the shotgun shell had been placed in a sealed envelope and that there had been no evidence of tampering. We have held that evidence that an item had been placed in an envelope and that envelope had then been sealed is adequate circumstantial evidence to establish safeguarding of the item. Gray v. State, 600 So.2d 1076 (Ala. Crim.App.1992).
The shotgun was seized under the direction and control of Investigator Bruce Devane, who testified at trial that it was in substantially the same condition as it was when it was seized. Again, there was no evidence of tampering and it was established to a reasonable probability that the object was in the same condition at the end of the chain as at the beginning of the chain. Ex parte Jones, 592 So.2d 210 (Ala.1991).

II
The appellant further argues on rehearing that this court erred in holding that the trial court properly admitted evidence seized from the appellant, his home, and his automobile, and that the trial court properly denied the appellant's motion to suppress. The appellant argues that he had invoked his Miranda rights at the time of the search and did not consent to the search. Conflicting evidence was presented as to whether the appellant consented to the search and seizure. In fact, the appellant's tape-recorded statement reflects that he consented to the search. The conflicting evidence presented a credibility question for the trial court and its decision is not to be overturned unless the trial court abused its discretion. Atwell v. State, 594 So.2d 202, 212 (Ala.Crim.App.1991) cert. denied, Inabinette v. State, 594 So.2d 214 (Ala.1992).

III
The appellant also argues that this court erred in holding that the trial court properly denied the appellant's motion to suppress his tape-recorded statement. This issue was sufficiently addressed in the original opinion.

IV
The appellant further contends that this court erred in failing to address the constitutionality of § 15-12-20, Code of Alabama 1975, as applied in this case. That statute essentially provides that before arraignment *51 the trial court shall determine whether a criminal defendant desires counsel and is financially able to obtain counsel. The appellant argues that the statute is unconstitutional as applied in this case because, he says, he was interrogated before he secured counsel, although, he says, he had not waived his right to counsel. This court upheld the trial court's determination that the appellant had waived his right to counsel and held that the appellant's tape-recorded statement was therefore admissible. In doing so, this court implicitly held that the appellant's argument as to the unconstitutional application of the statute was without merit. Moreover, the appellant failed to raise the alleged unconstitutionality of § 15-12-20 in the trial court. Constitutional issues must be raise in the trial court before they may be considered on appeal. Boldin v. State, 585 So.2d 218, 219 (Ala.Crim.App.1991).

V
Last, the appellant argues that this court erred in failing to address whether the evidence presented at trial was sufficient to sustain his conviction. Despite the fact that the judgment has been reversed and the case remanded for a new trial, we hold that there was sufficient evidence presented to the jury to sustain the appellant's conviction.
In deciding a question of the sufficiency of the evidence, this court must accept as true the evidence introduced by the prosecution, must accord the prosecution all legitimate inferences from that evidence, and must consider that evidence in the light most favorable to the prosecution. Morgan v. State, 589 So.2d 1315, 1317 (Ala.Crim.App. 1991); Jackson v. State, 516 So.2d 726, 752 (Ala.Crim.App.1985). The test is whether the jury might have reasonably found that the evidence excluded every reasonable hypothesis except that of guilt. Cumbo v. State, 368 So.2d 871, 874 (Ala.Crim.App.1979) cert. denied, 368 So.2d 877 (Ala.1979).
In this case, there was sufficient evidence to convict the appellant of manslaughter. The victim had had an affair with the appellant's wife. On the day of the victim's death, the appellant had written two notes indicating he was going to do something unusual. One note to the appellant's son told his son to go to his grandmother's house because the appellant would not be back. The notes indicated that the appellant was going to "correct a lot of wrongs."
The night of the victim's death, the appellant, armed with a shotgun, had gone to the house of another man who had also had an affair with his wife. The appellant discovered that the man was not home and left.
A forensics expert testified that the shotgun shell that was found at the scene of the shooting contained the same type of buckshot that killed the victim. There was also evidence that the shell had been ejected from the appellant's shotgun. Although there was additional inculpatory evidence presented to the jury, given our standard of review, we hold that the evidence summarized above was alone sufficient to support the jury's determination of the appellant's guilt.
OPINION EXTENDED; RULE 39(k) MOTIONS DENIED; APPLICATIONS OVERRULED.
All the Judges concur.