BOWEN, Presiding Judge.
Jimmy Wayne Smith, the appellant, was convicted of the unlawful distribution of. cocaine and was sentenced to ten years’ imprisonment. On this direct appeal from that conviction he contends that the State failed to establish a proper chain of custody for the admission into evidence of State’s exhibit one — the envelope containing the cocaine allegedly purchased from the appellant. The appellant maintains that there was tape and staples on the envelope for which no one could account and that, consequently, the cocaine was inadmissible. We disagree.
The State’s evidence tends to show that on January 8, 1991, the appellant sold a rock of crack cocaine to Detective Jimmy Ray Martin of the Selma Police Department, who was working undercover. Martin testified that approximately ten minutes after the sale, he sealed the crack cocaine in an envelope. He stated that he “taped it over.” R. 51. At trial, Martin identified the envelope, but stated, “Now, the other markings and the staples and this black writing, I did not put this on the envelope.” R. 52.
Martin testified that on February 8, 1991, he gave the sealed envelope to Detective Roger Goodman. At trial Goodman identified State’s exhibit one as the envelope he received from Martin, stating, ‘When Martin gave it to me, it was the same as it is now with the exception of this wide tape and these bold black markings that have been put on there by the lab people.” R. 93. Goodman made the following comments regarding the envelope: “[a]ll the tape except for this wide tape was on there [when Goodman received the envelope]” and “[i]t’s the same except for the markings and the tape that’s on it now.” R. 95,101. Goodman also testified: “I’m telling you this tape right here is from the lab. The tape under this tape is our tape. And why this — it looks like it might overlap to me. Why, I don’t know; I didn’t put it on there.” R. 95-96. However, Goodman testified that the wide tape was not on the envelope before it was taken to the lab: “That’s lab tape.” R. 97. When the envelope went to the lab “it had one, two, three strips on it. It had — all three seams were sealed.” R. 98. When the envelope was returned from the lab it had tape on both sides. R. 99. Goodman testified that staples were “sometimes” used by drug analyst Allen Adair of the Department of Forensic Science. R. 98-99. After receiving the sealed envelope from Martin, Goodman placed it in a vault where it remained until February 14, 1991, when he removed it and gave it to Detective Tommy Weber. Goodman did not see what was inside the envelope.
Weber testified that he received the sealed envelope from Goodman at the drug vault. R. 103. He delivered the sealed envelope, without opening it, to drug analyst Allen Adair. Weber positively identified State’s exhibit one: “This is the package that I took to the forensic lab.” R. 103. Weber stated that when he received the envelope it was “[j]ust taped in three places on the back. Right there; over the seals.” R. 104.
When asked on cross-examination about the additional tape on the envelope, Weber testified that the tape came “[f]rom the lab.” R. 108. He knew this “[n]ot [from] personal knowledge, but [because] every piece of evidence you pick up like that has tape on both ends from the lab. If you have an envelope like that, they tape both ends when you receive it back from the lab, or the pieces of evidence that I have picked up have been sealed like that.” R. 108.
Adair testified that he received the envelope in a sealed condition. He opened the envelope, analyzed the substance inside, and determined that it was cocaine. After conducting his tests, Adair “placed the substance back in this container.... Then I stapled the top; I sealed it with clear plastic tape and put my initials over the tape. I also sealed the other end just to re-enforce it.” R. 117. Adair placed “two inch” tape on both sides of the envelope. R. 118. See also 119. At trial, Adair testified that State’s exhibit one “appears to be” in the same sealed condition as it was when he gave it to Weber; his seals were “intact.” R. 117.
With regard to other staples on the envelope, Adair testified: “I have a feeling they did the stapling. They have a submission form which they submit to us. And normal *1034 ly, when they come in the lab, they have stapled their paperwork to this envelope; and that’s probably where that stapling came from. Of course I’m having to speculate on this.” R. 121-22.
Weber testified that Adair returned the envelope to him on March 4, 1991, “in the same condition that it is now with the exception of the red and white sticker.” R. 104. Weber returned the envelope to Detective Goodman.
In this case, defense counsel elicited testimony from State witnesses to the effect that during the time the envelope containing the cocaine was in the vault, “a lot of drugs came up missing and tampered with.” R. 94.
At trial, defense counsel objected to the admission into evidence of State’s exhibit one, and, at the request of the trial court, stated the following grounds:
‘Well, the grounds we feel, Your Honor, is tampering. I mean — And also there hasn’t been a proper foundation laid to cover that. All the testimony they have testified about, they only had three pieces of tape; and it clear from Mr. Adair, and I think you can look at it too and see there are apparently four. Another little piece on this end corner over there.” R. 125.
“In order to establish a proper chain [of custody], the State must show to a ‘reasonable probability that the object is in the same condition as, and not substantially different from, its condition at the commencement of the chain.’ McCray v. State, 548 So.2d 573, 576 (Ala.Crim.App.1988).” Ex parte Holton, 590 So.2d 918, 920 (Ala.1991).
In the present case, as in Ex parte Pierce, 612 So.2d 516, 519 (Ala.1992), the “chain of custody problems relate to the reliability, rather than the admissibility, of the evidence. Any chain of custody problems would therefore be reflected in the weight given to such evidence by the jury, and the trial court did not err in admitting the [cocaine] into evidence. Any weakness in the chain was not sufficient as to necessarily create a reasonable doubt.” (Citation omitted.)
“A chain of custody only need be proved to a reasonable probability. One need not negate remote possibilities of substitution, alteration, or tampering with proffered physical evidence in order to establish a proper chain of custody. Any conflict in the evidence concerning the chain of custody is addressed to the weight of the proffered physical exhibit as opposed to its admissibility.”
J. Colquitt, Alabama Law of Evidence § 9.1(c) at 484 (1990) (footnotes omitted).
“To warrant the reception of an object in evidence against an objection that an unbroken chain of custody has not been shown, it is not necessary that it be proved to an absolute certainty, but only to a reasonable probability, that the object is the same as, and not substantially different from, the object as it existed at the commencement of the chain.”
Blakely v. State, 344 So.2d 812, 814 (Ala.Cr.App.), cert. denied, 344 So.2d 817 (Ala.1977).
Here, there was no “missing link” in the chain of custody. Compare Ex parte Cook, 624 So.2d 511 (Ala.1993). In this case, as in Holton, “the chain of custody was sufficient to authenticate the item, allowing the envelope containing the cocaine to be entered into evidence.” 590 So.2d at 920.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.