The petitioner, Danny Harlon "Hoppy" Works, was convicted of murder and was sentenced to life imprisonment. The Court of Criminal Appeals affirmed. The trial court had admitted as evidence the knife allegedly used by Works in the murder. Works claims that there was a break in the chain of custody of that knife and, therefore, that the trial court erred in allowing it into evidence.
Donna Kay Edwards, the victim, was Works's former girlfriend. On July 27, 1991, Edwards went to a nightclub with Kimberly and Tom Berryman. After leaving the nightclub, the three drove to the Berrymans' home. Kimberly Berryman was driving the automobile, Edwards was in the front seat, and Tom Berryman was asleep in the back seat. As they drove into the Berrymans' driveway and parked, Works approached the passenger side of the car and started fighting with Edwards; he reached into the car. Kimberly Berryman got out of the car and went to Edwards's side of the car, but by the time she got there, Edwards had been pulled out of the car and was on the ground in a small pool of blood. Works refused to let Kimberly help Edwards. He brandished a knife at her and threatened to kill Kimberly and her sleeping husband. Works repeatedly kicked Edwards and jumped on her head, saying "die, damn you, die."
Eventually, Works left, taking the knife with him. He returned to his niece Tina Works's house to return the car he had borrowed from her, and he told her he had "done something really bad." Works gave Tina the knife, She cleaned the blood off the knife, wrapped it in a paper towel, put it in a plastic bag, and then took it with her when she went to the Berrymans' house to ask what had happened. The police were already at the Berrymans' house when Tina arrived, and an investigator questioned her. Tina told the investigator that the knife was under her car seat and that Works was at her house. Deputy Charles Berry, the crime scene technician, searched the car; he found the knife and took pictures of it.
At trial, Deputy Berry was the only witness to testify about the chain of custody of the knife. Berry testified that he took the knife from under Tina's car seat, marked his initials and the case number on it, and kept it with him until he secured it in an evidence locker. He further testified that he turned it over to the Alabama Department of Forensic Sciences the following day, and that when it was returned to him he locked it in the evidence locker until trial. Berry testified that he knew it was the same knife he had taken from the car because it had his initials and the case number scratched on it. Deputy Berry also identified the photographs he had taken of the knife; they were admitted into evidence without objection.
The State offered the knife as evidence after Deputy Berry and Tina Works had testified. At the conclusion of Tina's testimony, the State offered the knife as evidence. The following exchange then occurred:
 "[WORKS'S ATTORNEY:] Judge, we would object to the introduction. There has not been a chain of custody proven where the knife has been [sic]. *Page 1058 
 "[THE STATE:] Judge, I believe the sheriffs deputy testified about that and he had scratched his initials into it when he first got it. They're on there. The only time it's been out is when it was submitted to Forensic Sciences. There's no question this is the knife that he seized from Tina Works in this package just as precisely as she packaged it in the paper towel and the plastic bag.
"[THE COURT:] Overruled. It's admitted."
Works argues that it was prejudicial error to admit the knife into evidence, over objection, without establishing an unbroken chain of custody. The State argues that Works failed to preserve this issue for appeal by failing to state specific grounds for his objection. The State further argues that any error in admitting the knife was harmless under the circumstances. The Court of Criminal Appeals affirmed Works's conviction, stating in an unpublished memorandum that Works had failed to preserve the issue for appeal because, although he objected to what he considered an improper chain of custody, that court said he failed to state specific grounds for his objection. We affirm on different grounds.
We first address whether the issue was properly preserved for review.
 "Specific objections or motions are generally necessary before the ruling of the trial judge is subject to review, unless the ground is so obvious that the trial court's failure to act constitutes prejudicial error. . . . An objection without specifying a single ground, such as 'I object,' 'objection,' or 'we object' is not sufficient to place the trial court in error for overruling the objection."
Lawrence v. State, 409 So.2d 987, 989 (Ala.Cr.App. 1982) (citation omitted). The purpose of requiring a specific objection to preserve an issue for appellate review is to put the trial judge on notice of the alleged error, giving an opportunity to correct it before the case is submitted to the jury. Jennings v. State, 588 So.2d 540, 541 (Ala.Cr.App. 1991). In Jennings, the Court of Criminal Appeals held that the objection, "Improper predicate," coupled with the further response, "That is improper. That is not the correct way to do that," was sufficient to put the court on notice that the alleged error was the impeachment of the defendant with evidence of prior convictions. 588 So.2d at 541-42. In Ex parteGarrett, 608 So.2d 337, 338 (Ala. 1992), we held that an evidentiary issue was properly preserved for review; the defendant had made only a general objection when the evidence was offered, but had later renewed the objection, stating further, "The chain of custody was not proven through Bob Williamson to Mark Cruise." As Judge Taylor stated in his dissent from the memorandum affirmance in this case, "Defense counsel should not have to direct his opponent's mind to the correct law the way one would thrust a beagle's nose on a rabbit trail." Works v. State, 640 So.2d 1056 (Ala.Cr.App. 1993) (Taylor, J., dissenting). Works's objection was sufficiently specific to put the court on notice of the alleged error in the chain of custody.
Having found the issue properly preserved, we now consider Works's argument that it was error to allow the knife into evidence without requiring the State to establish a complete chain of custody. In Ex parte Holton, 590 So.2d 918 (Ala. 1991), we explained our chain-of-custody analysis:
 "The chain of custody is composed of 'links.' A 'link' is anyone who handled the item. The State must identify each link from the time the item was seized. In order to show a proper chain of custody, the record must show each link and also the following with regard to each link's possession of the item: '(1) [the] receipt of the item; (2) [the] ultimate disposition of the item, i.e., transfer, destruction, or retention; and (3) [the] safeguarding and handling of the item between receipt and disposition.' Imwinklereid, The Identification of Original, Real Evidence, 61 Mil. L.Rev. 145, 159 (1973).
 "If the State, or any other proponent of demonstrative evidence, fails to identify a link or fails to show for the record any one of the three criteria as to each link, the result is a 'missing' link, and the item is inadmissible. If, however, the State has shown each link and has shown all three *Page 1059 
criteria as to each link, but has done so with circumstantial evidence, as opposed to the direct testimony of the 'link,' as to one or more [of the] criteria or as to one or more links, the result is a 'weak' link. When the link is 'weak,' a question of credibility and weight is presented, not one of admissibility."
590 So.2d at 920. The State did not 1) identify the person who received the knife in the Department of Forensic Sciences, 2) identify the person in the Department of Forensic Sciences who ultimately disposed of the knife, or 3) show the safeguarding and handling of the knife while it was in the custody of the Department of Forensic Sciences. Thus, there was a missing link in the chain of custody of the knife under the Holton analysis.
However, because the condition for the knife was not an issue in this case, and its authenticity was established by other means, it was not necessary to establish a chain of custody. Ex parte Jones, 592 So.2d 210, 212 (Ala. 1991); Exparte Holton, 590 So.2d 918 (Ala. 1991); Miller v. State,602 So.2d 488, 494 (Ala.Cr.App. 1992). Kimberly Berryman and Deputy Berry identified the knife as the one used by Works. That testimony was sufficient to prove to a reasonable probability that the knife admitted at trial was the same knife used by the defendant in the commission of the offense, thereby satisfying the underlying purpose of the chain of custody rule. Ex parteJones, supra; Ex parte Holton, supra; Miller v. State, supra.
Had it been error to admit the knife, the error would have been harmless. "The admission of incompetent evidence is harmless error where the fact to which such evidence relates is otherwise established by competent evidence." Lawrence v.State, 409 So.2d at 989; see also Ex parte Cook, 624 So.2d 511,514 (Ala. 1993); Springfield v. State, 580 So.2d 88, 90
(Ala.Cr.App. 1991), cert. stricken, Ex parte Springfield,596 So.2d 659 (Ala. 1991).
For the foregoing reasons, we affirm the judgment of the Court of Criminal Appeals.
AFFIRMED.
HORNSBY, C.J., and STEAGALL, KENNEDY, INGRAM and COOK, JJ., concur.
HOUSTON, J., concurs in the result.
 ON APPLICATION FOR REHEARING
SHORES, Justice.
OPINION MODIFIED; APPLICATION OVERRULED.
HORNSBY, C.J., and MADDOX, HOUSTON, STEAGALL, KENNEDY, INGRAM and COOK, JJ., concur.