The appellant, Mickey Adams, was convicted of the unlawful distribution of controlled substances in violation of §13A-12-211, Code of Alabama 1975. He was sentenced to 20 years in the penitentiary.
The state's evidence tended to show that on October 28, 1992, the appellant sold 5.45 grams of marijuana to Greg Howell, an agent of the Alcoholic Beverage Control Board, who was working undercover in Florida, Alabama. Agent Howell testified that at 7:30 p.m. he and a confidential informant drove to Charlie Greer's house, the appellant's codefendant. When they arrived at the house, the confidential informant got out of the car and talked to Greer for a moment. Greer and the appellant then came over and introduced themselves to Agent Howell. Howell testified that he agreed to buy $25 worth of marijuana from the appellant. The appellant and Greer went behind Greer's house and Howell waited in the house. Howell testified that several other people were present in the house while he was there, including a few *Page 226 
children. The appellant and Greer returned with a pint jar containing marijuana. The appellant weighed the marijuana on a scale in the kitchen and put it in a plastic bag. Howell testified that the appellant gave him the marijuana and that he then gave the appellant $25.
The appellant raises seven issues on appeal.
 I
The appellant first contends that the trial court erred in refusing to ask several of his requested voir dire questions. However, the record before us does not contain the voir dire examination of the prospective jurors, so there is nothing for us to examine.
 "The extent of the voir dire examination is largely discretionary with the trial court. Jennings v. State, 513 So.2d 91 (Ala.Cr.App. 1987); Heath v. State, 480 So.2d 26 (Ala.Cr.App. 1985). A trial court will only be reversed for an abuse of that discretion. Jennings; Edwards v. State, 452 So.2d 487 (Ala.Cr.App. 1982), rev'd. on other grounds, 452 So.2d 503 (Ala. 1983).
 "Since the record does not contain the voir dire portion of the trial record, this court cannot determine if there was an abuse of discretion. See Fuller v. State, 472 So.2d 452 (Ala.Cr.App. 1985) (appellate court review is limited to matters of record)."
Corbin v. State, 551 So.2d 429, 430 (Ala.Cr.App. 1989). SeeSullivan v. State, 651 So.2d 1138 (Ala.Cr.App. 1994); Lane v.State, 644 So.2d 1318 (Ala.Cr.App. 1994); and Sanders v. State,641 So.2d 1260 (Ala.Cr.App. 1993).
 II
The appellant next contends that the trial erred in denying his motion to strike a prospective juror for cause. More specifically, the appellant contends that the trial court should have allowed him to strike for cause a prospective juror who said he would give more credibility to the statement of a law enforcement officer than he would to the statement of other witnesses. Certainly an argument could be made that any prospective juror who responds this way might be biased. However, the record before us does not contain the voir dire examination of the prospective jurors. "This court cannot predicate error on matters not shown by the record nor can we presume error from a silent record." Owens v. State,597 So.2d 734, 736 (Ala.Cr.App. 1992). "Where the record is silent on appeal, it will be presumed what ought to have been done was not only done, but rightly done." Owens, 597 So.2d at 736.
 III
The appellant next contends that the trial court erred in receiving hearsay into evidence. On direct examination, Agent Howell testified that the appellant asked him if he needed $10 or $20 worth of marijuana. The appellant objected at trial on the grounds that this statement was hearsay. The trial court correctly overruled this objection.
 "Hearsay testimony consists of an out-of-court statement offered to prove the truth of the matter asserted. Ex parte Bryars, 456 So.2d 1136, 1138
(Ala. 1984). However, the prohibition against hearsay testimony applies only to a statement offered to prove the truth of its contents. Tillis v. State, 469 So.2d 1367, 1370 (Ala.Cr.App. 1985). 'A statement offered for some other purpose other than to prove the truth of the matter of its factual assertion is not hearsay.' Thomas v. State, 408 So.2d 562, 564 (Ala.Cr.App. 1981)."
Brannon v. State, 549 So.2d 532, 539 (Ala.Cr.App. 1989). Here, what the appellant told Agent Howell was not being offered to prove the truth of the appellant's statement. The statement was offered to show the circumstances that led to the sale of the marijuana. "All acts done and words spoken pending the commission of a particular act, tending to illustrate or give character to the act, are admissible as part of the res gestae of the act." White v. State, 589 So.2d 765, 767
(Ala.Cr.App. 1991); Neal v. State, 460 So.2d 257, 261
(Ala.Cr.App. 1984).
Therefore, the appellant's statement to Howell was not hearsay and the trial court did not err in receiving it into evidence. *Page 227 
 IV
The appellant next contends that the trial court erred in denying his motion for a judgment of acquittal. More specifically, the appellant contends that the state failed to prove a sufficient chain of custody for the marijuana seized by Agent Howell. Additionally, the appellant contends that the state failed to prove that marijuana is a controlled substance.
The Alabama Supreme Court set forth the standard for showing a proper chain of custody in Ex parte Holton, 590 So.2d 918
(Ala. 1991). The Court stated:
 "This opinion sets forth an analysis to be followed in deciding whether a proper chain of custody has been shown. We have held that the State must establish a chain of custody without breaks in order to lay a sufficient predicate for admission of evidence. Ex parte Williams, 548 So.2d 518, 520 (Ala. 1989). Proof of this unbroken chain of custody is required in order to establish sufficient identification of the item and continuity of possession, so as to assure the authenticity of the item. Id. In order to establish a proper chain, the State must show to a 'reasonable probability that the object is in the same condition as, and not substantially different from, its condition at the commencement of the chain.' McCray v. State, 548 So.2d 573, 576
(Ala.Cr.App. 1988). Because the proponent of the item of demonstrative evidence has the burden of showing this reasonable probability, we require that the proof be shown on the record with regard to the various elements discussed below.
 "The chain of custody is composed of 'links.' A 'link' is anyone who handled the item. The State must identify each link from the time the item was seized. In order to show a proper chain of custody, the record must show each link and also the following with regard to each link's possession of the item: '(1) [the] receipt of the item; (2) [the] ultimate disposition of the item, i.e., transfer, destruction, or retention; and (3) [the] safeguarding and handling of the item between receipt and disposition.' Imwinklereid, The Identification of Original, Real Evidence, 61 Mil.L.Rev. 145, 159 (1973).
 "If the State, or any other proponent of demonstrative evidence, fails to identify a link or fails to show for the record any one of the three criteria as to each link, the result is a 'missing' link, and the item is inadmissible. If, however, the State has shown each link and has shown all three criteria as to each link, but has done so with circumstantial evidence, as opposed to the direct testimony of the 'link,' as to one or more criteria or as to one or more links, the result is a 'weak' link. When the link is 'weak,' a question of credibility and weight is presented, not one of admissibility."
590 So.2d at 919-20.
Agent Howell testified that after he purchased the marijuana from the appellant, he gave it to Lieutenant Leo "Sonny" Bedsole of the Covington County Sheriff's Department so that it could be locked in the evidence locker of the sheriff's department. Lieutenant Bedsole testified that Agent Howell gave the marijuana to him and that he sealed it inside a plastic bag, using tape to seal the bag. Bedsole said that he then locked the marijuana inside the evidence locker at the Covington County Sheriff's Department. Bedsole then took the marijuana to Mark Crews at the Alabama Department of Forensic Science's lab in Enterprise. Crews testified that he received the marijuana in a sealed bag from Bedsole. He said that he analyzed the marijuana and that he then placed it back in the plastic bag and sealed it. Crews testified that the marijuana was stored in a secured storage facility until he gave it back to Bedsole and that at that time it did not appear that the bag had been tampered with. Bedsole testified that he received the marijuana from Crews at the lab in Enterprise. Bedsole testified that it was in the same condition at trial as it was when he received it from the lab.
We hold that the state accounted for all of the links in the chain of custody of the marijuana and showed to a "reasonable probability that the object [was] in the same condition as, and not substantially different from, its *Page 228 
condition at the commencement of the chain." Holton, 590 So.2d at 920.
The appellant also contends that the trial court erred in denying his motion for a judgment of acquittal because, he says, the state failed to prove that marijuana is a controlled substance. "This court has held repeatedly that a trial court can take judicial notice of whether a substance is designated as a controlled substance and can so instruct the jury."Burks v. State, 611 So.2d 487, 490 (Ala.Cr.App. 1992). The jury instructions, taken as a whole, were sufficient to show that the trial court had taken judicial notice of the fact that marijuana is a controlled substance under Alabama law.
 V
The appellant next contends that the trial court erred in not allowing him to present evidence that he had had a lifelong problem with alcohol. The appellant offered his own testimony in order to establish that he was so intoxicated at the time of the act that he was not able to form the intent to commit the offense of unlawful distribution of a controlled substance. The trial court disallowed this testimony. The appellant contends he should have been allowed to introduce this evidence to establish an intoxication defense to the element of intent. See § 13A-3-2, Code of Alabama. In fact, lifelong alcohol addiction might be equally suggestive that the user had a high tolerance to alcohol and that therefore his ability to form an intent might not be affected by alcohol. The only evidence of alcohol use that would be relevant to the appellant's intoxication defense would be evidence of his intoxication at the time the crime was committed. Therefore, the trial court did not abuse its discretion in not allowing the appellant to present evidence of his alcoholism.
 VI
The appellant next contends that the trial court erred in refusing some of his requested jury instructions. The trial court refused to give the appellant's requested instructions 1, 2, 4, 5, 6, 8, 9, and 11. Specifically, the appellant contends that the trial court failed to instruct the jury that the crime must have been committed "knowingly."
Requested instructions 1, 2, and 4 essentially provided that the jury verdict must be unanimous, that the burden of proof is on the state, and that the accused comes into court with a presumption of innocence. Requested instructions 5, 6, 8, and 9 dealt with the concept of reasonable doubt. Requested instruction 11 explained the intoxication defense. All of these charges were substantially covered by the court's instructions to the jury. "The refusal of a requested written instruction, although it is a correct statement of the law, shall not be cause for reversal on appeal if it appears that the same rule of law was substantially and fairly given to the jury in the court's oral charge or in other charges given at the request of the parties." Rule 21.1, Ala.R.Crim.P.
Furthermore, the court's instructions to the jury included the following:
 "The Court charges you that if the State has failed to prove beyond a reasonable doubt that the Defendant, Mickey Adams, was the one who knowingly sold, furnished, gave away, manufactured, delivered or distributed Marijuana, then you should find the Defendant not guilty."
We conclude therefore, that the trial court did not err in its instructions to the jury and did not fail to instruct the jury that the offense must have been "knowingly" committed.
 VII
Last, the appellant contends that Rules 16.1(c)(1) and 16.1(e) of the Ala.R.Crim.P. violate the Confrontation Clause of the Sixth Amendment to the United States Constitution. More specifically, the appellant contends that because these rules exempt witness lists from discovery by the defense, they prevent adequate cross-examination of the state's witnesses. Therefore, the appellant contends that he was denied the right to confront his accusers.
The United States Supreme Court addressed a similar issue inPennsylvania v. Ritchie, 480 U.S. 39, 107 S.Ct. 989,94 L.Ed.2d 40 (1987). Ritchie was charged with *Page 229 
several sexual offenses against his 13-year-old daughter. During discovery, he subpoenaed the office of Children and Youth Services (CYS), a state agency charged with investigating cases of suspected mistreatment and neglect. He sought to obtain the records concerning his daughter. Under Pennsylvania statute, the records were confidential and CYS refused to comply with the subpoena. On appeal to the United States Supreme Court, Ritchie contended that access to the records was required by the Confrontation Clause of the Sixth Amendment. The Court made it clear that it would not "transform the Confrontation Clause into a constitutionally compelled rule of pretrial discovery." Ritchie, 480 U.S. at 54, 107 S.Ct. at 999,94 L.Ed.2d at 53. The Court, in an opinion written by Justice Powell, summarized the law relating to the Confrontation Clause as follows:
 "The Confrontation Clause provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination.
". . . .
 ". . . The opinions of this Court show that the right to confrontation is a trial right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination. . . . The ability to question adverse witnesses, however, does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony. Normally the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses. In short, the Confrontation Clause only guarantees 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' "
Ritchie, 480 U.S. at 54, 107 S.Ct. at 998-99,94 L.Ed.2d at 53-55. (Emphasis in Ritchie; footnote omitted; citations omitted.)
Although an accused has considerable discovery rights, based on the current interpretation of the Sixth Amendment to the United States Constitution, those rights do not extend to pretrial discovery of witness lists. Here, the appellant had the opportunity to physically confront and to cross-examine the witnesses. His Sixth Amendment rights were not violated.
For the foregoing reasons, the judgment in this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur except BOWEN, P.J., who concurs in result only without opinion.