We granted the petition for the writ of certiorari to examine two issues: (1) whether the State proved a sufficient chain of custody of certain items of evidence; and (2) whether the trial court abused its discretion in not ordering a new trial based on newly discovered evidence. Because of missing links in the chain of custody, we reverse and remand for a new trial.
Between 1:00 and 1:30 a.m. on September 15, 1990, Michael Dewayne Hunter was stabbed to death with a knife at his home in Birmingham. Members of the Birmingham Police Department, including Officer Belinda Weldon, were called to investigate. Officer Fred Hedgepath collected cigarette butts that were later found to have been smoked by someone with Teresa Cook's blood type. Cook was Hunter's girlfriend.
Two days later, Doolan Hoaglan called Weldon to report that Cook had told him that she had been involved in a stabbing in which a man had been stabbed several times, and that Cook had gone to stay with her mother in Rigby, Idaho. Weldon obtained a warrant, and she and Officer Don Lacey searched Cook's mobile home. Weldon directed Lacey to collect cigarette butts, a knife scabbard, a blood-soaked piece of gauze, and two socks from the bathroom.
Cook was arrested a few days later in Idaho. Weldon and another officer went to Idaho to bring Cook back to Alabama. The officers also recovered several items, including a pair of blue jeans, that Idaho law enforcement officers had seized from Cook and from her truck.
The cigarette butts, scabbard, gauze, socks, and blue jeans were admitted at trial over Cook's chain-of-custody objections. Hoaglan was the only witness who connected Cook to the murder. The jury returned a verdict of guilty, and the trial court entered a judgment against Cook based on the verdict and sentenced her to 25 years in prison.
Cook moved for a new trial based on newly discovered evidence. The trial court held two hearings on the motion. Erskine Page *Page 513 
testified that he had contacted Cook's family after reading about the trial and conviction in the newspaper. Page testified that he knew Hoaglan; that shortly after the murder he had removed Hoaglan's truck from a ditch near Hunter's house and Hoaglan's place of employment; that Hoaglan was drinking beer at the time; and that he saw a rag with blood on it in Hoaglan's truck. Gerald Palmer testified that he was driving the truck with Page when they came upon Hoaglan; this testimony contradicted Hoaglan's trial testimony that he never left work on the night Hunter was murdered. Travis Quick, Cook's stepfather, testified that Cook had been planning to go to Idaho for some time and that Hoaglan was interested in trying to convince her not to go. The State called Hoaglan, who denied the testimony of Page and Palmer, and called Weldon, who testified that she did not notice any marks on Hoaglan's truck when she met with him two days after the murder.
The trial court denied the motion for a new trial, and Cook appealed. The Court of Criminal Appeals affirmed, holding that the State had established a proper chain of custody for the evidence and that the trial court had not abused its discretion in denying a new trial. 609 So.2d 454 (Ala.Cr.App. 1992).
The first issue is whether the State established a chain of custody of the items admitted at trial. Cook, relying on Exparte Holton, 590 So.2d 918 (Ala. 1991), argues that the trial court erred in admitting the cigarette butts, scabbard, gauze, socks, and jeans, because no witness testified regarding the handling and safeguarding of these items from the time they were recovered until the toxicologist examined them. In Holton, this Court set forth the following analysis for determining whether a proper chain of custody has been established:
 "The chain of custody is composed of 'links.' A 'link' is anyone who handled the item. The State must identify each link from the time the item was seized. In order to show a proper chain of custody, the record must show each link and also the following with regard to each link's possession of the item: '(1) [the] receipt of the item; (2) [the] ultimate disposition of the item, i.e., transfer, destruction or retention; and (3) [the] safeguarding and handling of the item between receipt and disposition.' Imwinklereid, The Identification of Original, Real Evidence, 61 Mil.L.Rev. 145, 159 (1973).
 "If the State, or any other proponent of demonstrative evidence, fails to identify a link or fails to show for the record any one of the three criteria as to each link, the result is a 'missing' link, and the item is inadmissible. If, however, the State has shown each link and has shown all three criteria as to each link, but has done so with circumstantial evidence, as opposed to the direct testimony of the 'link,' as to one or more criteria or as to one or more links, the result is a 'weak' link. When the link is 'weak,' a question of credibility and weight is presented, not one of admissibility."
590 So.2d at 920.
At trial, Weldon identified the cigarette butts, scabbard, gauze, and socks as items that Lacey collected at Cook's mobile home. Weldon testified that the scabbard was sent to the toxicologist, and that the scabbard and gauze appeared to be in the same or similar condition as when Lacey collected them. Lacey did not testify, and neither did Hedgepath, who had collected the cigarette butts at Hunter's house. Upon objection from Cook's counsel, the prosecutor withdrew the question about where the socks were sent. The items were admitted over objections that Weldon had not personally collected them or kept them in her custody.
The jeans were admitted, based on Weldon's testimony that she received them from the Idaho law enforcement officers, examined them, and watched as they were sealed in a bag at the police station in Rigby, Idaho. The trial court overruled Cook's objection, which was based on the ground that no witness had linked the jeans to Cook. Weldon testified on cross-examination that she did not know where the jeans came from other than what she was told in Idaho.
The next witness to testify regarding the chain of custody was Phyllis Rowland, a forensic serologist. Rowland testified that she received sealed envelopes from Weldon containing *Page 514 
the cigarette butts, scabbard, gauze, socks, and jeans. Rowland could not identify the type of blood on the gauze but testified that the blood on the socks matched Hunter's blood type, although she could not be certain that the blood was his. Rowland testified that the saliva on the cigarette butts matched Cook's blood type, and that she resealed the envelopes after the tests.
The State did not identify the person who seized the jeans, or who kept them until Weldon received them, and it offered no evidence of the manner in which they were handled and safeguarded; therefore, the jeans should not have been admitted. The error was harmless, however, because the State did not connect the jeans to the case against Cook. The jeans were not probative of any fact in issue.
A link was also missing in the chain of custody of the cigarette butts, scabbard, gauze, and socks. Although Weldon testified that she directed and observed the collection, the State did not establish when these items were sealed or how they were handled or safeguarded from the time they were seized until Rowland received them. This evidence was inadmissible under Holton.
The cigarette butts were prejudicial to Cook, because they established that someone with her blood type was in Hunter's house. Likewise, the socks found in Cook's mobile home were prejudicial, because they were stained with blood that matched Hunter's type. The erroneous admission of these items probably injuriously affected Cook's substantial rights, and she is entitled to a new trial. See Rule 45, Ala.R.App.P.
Having concluded that Cook is entitled to a new trial because the State failed to establish a proper chain of custody, we need not address Cook's claim that the newly discovered evidence entitled her to a new trial.
REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES, ADAMS, HOUSTON, KENNEDY and INGRAM, JJ., concur.