[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 906 
James Lee appeals his conviction for three counts of unlawful distribution of a controlled substance. Two indictments were returned against Lee — CC-98-1131, charging two counts of unlawful distribution of a controlled substance; and CC-98-1132, charging one count of unlawful distribution of a controlled substance. As a habitual felony offender with one prior felony conviction, Lee received a sentence of 15 years' imprisonment for each conviction. Each sentence was mandatorily enhanced by an additionally 10 years because the drug sales took place within three miles of a school and within three miles of a public housing project. See § 13A-12-250 and § 13A-12-270, Ala. Code 1975. The sentences were to be served consecutively.
 Facts
CC-98-1131
At the time of the incident that was the basis for Count 1 in case no. CC-98-1131, Carol Sue Richardson was a police officer who had been involved in numerous narcotic buys and had been trained in identifying narcotics. She testified that on January 24, 1997, she was working in Foley, as a member of a undercover police task force conducting a "sting" operation to catch and arrest sellers of illegal drugs. Rick Pickren of the Foley Police Department was in charge of the operation. Before Richardson attempted to make the drug purchase, Pickren provided her with a vial to put the purchased substance in for safekeeping. She stated that she drove her automobile to Oak Street and that Lee walked up to her vehicle and sold her one rock of crack cocaine for $20. Immediately following the transaction, Richardson placed the cocaine inside the vial, sealed the vial, and took it directly to Pickren.
Brandy Vining testified that at the time of the incident serving as the basis for Count 2 in case no. CC-98-1131, she was helping Pickren conduct police-monitored drug buys in Foley. She stated that she had been involved in about 30 drug buys for the police before she participated in the one involving Lee. She stated that on January 31, 1997, she was driving in the Arronville area. She said that Lee motioned for her to drive to the curb where he was standing and that he asked her if she needed any drugs. She stated that she asked for a "twenty" and that he handed her a cocaine rock in exchange for $20. Vining testified that she put the cocaine in a vial that Pickren had provided, and that she then took the cocaine to Pickren, who was waiting at a nearby location.
Rick Pickren testified that when the undercover drug buys in this case were made, he was working as a narcotics investigator for the Foley Police Department. He stated that he oversaw the drug buys made by Richardson and Vining on January 24 and 31 involving Lee. Pickren testified that Lee's transactions with Richardson and Vining were videotaped. The videotapes of these transactions were played for the jury. He testified that the transactions were also monitored by audio *Page 907 
devices to ensure Richardson's and Vining's safety and so he would know when the transaction was completed. Pickren testified that he met Richardson and Vining immediately after the transactions at a predetermined location. Pickren stated that he conducted a field test on the substances he received from Vining and Richardson and that those tests indicated that the substance in both instances was cocaine. He sealed each substance in an evidence envelopes and locked the envelope in an evidence locker until he delivered them to the Department of Forensic Sciences Lab. The Department of Forensic Sciences report showed that the substances in both vials was cocaine.
CC-98-1132
Dean McGowan is a narcotics officer for the Baldwin County Sheriff's Department. He testified that on January 24, 1997, he was working in Foley near the Arronville Housing Project. He stated that he, Agent Mike Gulledge, Agent David Larimer, and Corp. Bob King were working together as part of a joint investigation being conducted by the narcotics division of the Alabama Alcoholic Beverage Control Board. McGowan said the officers had equipped a vehicle with a video camera and an audio device in order to monitor undercover drug transactions. On January 24 the officers monitored a drug transaction between Larimer and Lee. After hearing over the audio device that the transaction had been completed, McGowan met Larimer at a prearranged location. The videotape of the transaction was played for the jury.
Kelly Cannon is a forensic scientist with the Alabama Department of Forensic Sciences, specializing in the field of drug chemistry. She testified that she received a substance from Mike Gulledge on January 29, 1997, pertaining to the Larimer drug purchase. She stated that the form submitted with the substance set out the chain of custody. After conducting tests, she determined that the substance was cocaine and that it was in the form commonly known as crack cocaine.
Lee raises three issues on appeal.
 I.
Lee contends that the trial court erred by consolidating cases no. CC-98-1131 and case no. CC-98-1132 on the day of trial. When case no. CC-98-1131 was called for trial, the State made an oral motion to consolidate it with case no. CC-98-1132. The transcript begins with the following exchange:
"THE COURT: Make a motion to consolidate them?
 "MS. ROBERTS [Defense counsel]: Yes, sir, I do, I have an objection to —
"THE COURT: . . . [W]hy . . . hadn't we done this before?
 "All right. Give the grounds for the motion to consolidate.
 "MS. MATTINGLY [prosecutor]: The grounds are the fact on each of the cases — they occurred out of the same circumstances and the date for each of the cases.
"THE COURT: What is your objection?
 "MS. ROBERTS: Your Honor, that they have — these were indicted in 1997, in May 1997, they have had a year and a half to file this motion and had not seen fit to do it and I have not prepared with the idea in mind that they both would go forward at the same time. They are two different purchases for different people at different times and I don't think that they should go together and I think the Defendant should have notice prior to those [offenses] being consolidated.
 "MS. MATTINGLY: Your Honor, they are on the same date within about a minute apart from each other.
 "THE COURT: About a minute apart? You expect the evidence to show that?
"MS. MATTINGLY: Yes, Your Honor.
"THE COURT: Were you aware of that? *Page 908 
 "MS. ROBERTS: That they were about a minute apart? Yes, sir, they were. And I was informed of that this morning, about half an hour ago that they were about a minute apart. But the purchases were by different people.
 "THE COURT: I saw in one of the files there was some kind of proposition for — you all couldn't reach an agreement?
"MS. MATTINGLY: We withdrew that offer.
"MS. ROBERTS: He rejected it.
 "THE COURT: On the State's motion to consolidate, I consolidate it.
"MS. ROBERTS: Thank you, Your Honor."
R. 6-8.
Rule 13.3(c), Ala.R.Crim.P., states:
 "(c) Consolidation. If offenses or defendants are charged in separate indictments, informations, or complaints, the court on its own initiative or on motion of either party may order that the charges be tried together or that the defendants be joined for the purposes of trial if the offenses or the defendants, as the case may be, could have been joined in a single indictment, information, or complaint. Proceedings thereafter shall be the same as if the prosecution initially were under a single indictment, information, or complaint. However, the court shall not order that the offenses or the defendants, as the case may be, be tried together without first providing the defendant or defendants and the prosecutor an opportunity to be heard."
(Emphasis added).
The criteria for joining offenses in an indictment, information, or complaint are set forth in Rule 13.3(a), Ala.R.Crim.P.:
 "(a) Offenses. Two or more offenses may be joined in an indictment, information, or complaint, if they:
"(1) Are of the same or similar character; or
 "2) Are based on the same conduct or are otherwise connected in their commission; or
 "3) Are alleged to have been part of a common scheme or plan."
 Here, case no. CC-98-1131 and case no. CC-98-1132 could properly have been consolidated because the offenses charged in each case occurred about one minute apart, they were of the same character, and were part of a common scheme or plan to sell crack cocaine from or near the Arronville Housing Project in Foley. However, the trial court erred in consolidating these cases without affording the defense an opportunity to be heard.
Before the trial court decides to consolidate offenses, the defendant must be given the "opportunity to be heard." "`We consider the phrase "opportunity to be heard" as synonymous with the phrase "opportunity to object," which, of necessity, requires notice that the consolidation has been requested.'" Nye v. State,639 So.2d 1383, 1385 (Ala.Cr.App. 1993) (quoting Sharpe v. State,560 So.2d 1107, 1111 (Ala.Cr.App. 1989)). Moreover we have held:
 "Notice and an opportunity to be heard are `the hallmarks of due process,' Anonymous v. Anonymous, 353 So.2d 515, 519 (Ala. 1977). See also Humane Society of Marshall County v. Adams, 439 So.2d 150, 152 (Ala. 1983) (`The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.')."
Sharpe v. State, 560 So.2d 1107, 1111 (Ala.Cr.App. 1989).
In the instant case, Lee did not receive notice, before his trial began, of the State's intention to seek consolidation of case no. CC-98-1132 with case no. CC-98-1131.
 "Rule 13.3(c), Ala.R.Crim.P., states in part: `[T]he court shall not order that the offenses . . . be tried together without first providing the defendant or defendants *Page 909 
and the prosecutor an opportunity to be heard.' (Emphasis added.) This rule is mandatory and requires strict compliance. Noncompliance results in [reversible] error. Ex parte Jones, 473 So.2d 545 (Ala. 1985)."
Ex parte Neal, 675 So.2d 531, 532 (Ala.Cr.App. 1995).
Moreover, Lee's objection that he had no notice of the State's motion to consolidate and that the defense had not prepared for a trial of both cases at the same time is well taken. "Just as knowing whether a criminal defendant must stand trial alone, or with another, is crucial to trial strategy and case preparation, so is knowing whether a defendant must face one charge, or multiple charges." Ex parte Glanton, 474 So.2d 156,157 (Ala. 1985).
Based on the above, we hold that the trial court's ruling consolidating case no. CC-98-1132 with case no. CC-98-1131 resulted in reversible error as to the convictions in both cases.
 II.
Lee contends that the trial court committed error by allowing a certificate of analysis of the cocaine in case no. CC-98-1131 into evidence as State's Exhibit 3 over his objection. "Section12-21-300, Code of Alabama 1975, which was effective January 1, 1996, provides that in any criminal case, the prosecuting authority may offer a certificate of analysis, in lieu of direct testimony." Bivins v. State, 710 So.2d 521, n. 1 (Ala.Cr.App. 1997).[1] Section 12-21-301, Code of Alabama 1975, provides:
 "The party seeking to introduce a certificate of analysis shall not less than 40 days prior to the commencement of the hearing or trial, give written notice to all parties of intent to offer proof by a certificate of analysis. The notice shall include a copy of the certificate of analysis."
Specifically, Lee argues that because the State failed to file notice more than 40 days before trial of its intent to offer proof of the test results by a certificate of analysis, the certificate of analysis should not have been admitted into evidence.
The State conceded that "notice" had not been filed, but it asserted that defense counsel was provided a copy of the certificate of analysis in the discovery materials sent to the defense the Monday before trial began on Wednesday. At this juncture, the defense agreed that discovery had been provided Monday morning. The trial court overruled the defense's objection to the admission of the certificate. A few moments later, when the State requested the results of the analysis from its *Page 910 
witness, defense counsel asked to be allowed to approach the bench and stated the following to the trial court:
 "Your Honor, this is the extent of my discovery that I received on Monday in this particular case. I was confused. I thought the other case is the one. Yes, sir. That was this is [(sic)] the indictment for Mr. Pickren's case. I did not receive a certificate of analysis ever or I did not receive it Monday.
 "And, Your Honor, the statute § 12-21-301 states specifically that parties should receive a certificate of analysis not less than 40 days [before] the hearing or trial."
R. 28. The trial court again overruled the objection and the certificate of analysis was admitted into evidence. That certificate showed that the substance in case no. CC-98-1131 was cocaine.
The State contends on appeal that any error in this regard was harmless error because, it says, defense counsel was aware of its intent to introduce the certificate of analysis, a copy of which had been provided to the defense in discovery. Therefore, according to the State, the defense should not have been surprised by the introduction of the certificate. This argument overlooks defense counsel's assertion that he did not receive a certificate of analysis before trial. This argument also overlooks the statutory requirement that the party seeking to introduce the certificate "shall not less than 40 days prior to the commencement of the hearing or trial" provide notice to the other party of its intent to rely on the certificate instead of direct testimony to prove that the substance was an illegal substance. Here, if the production of discovery was notice of the State's intent to use the certificate, as it asserts, it was provided two days before trial. Moreover, the State made no assertion before trial that it intended to rely on the certificate of analysis to prove that the substance was illegal.
The statute was not complied with, thus, the certificate of analysis was improperly admitted into evidence. Therefore, the State did not prove beyond a reasonable doubt that Lee sold a controlled substance to Richardson and Vining in case no. CC-98-1131. The convictions in case no. CC-98-1131 for two counts of distribution of a controlled substance must be reversed.
 III.
Lee contends that the cocaine in case no. CC-98-1132 was inadmissible because, he says, the State did not establish a valid chain of custody showing that the substance tested and determined to be cocaine was the same substance Lee sold to Larimer. According to Lee, there was no continuous, established chain of custody from Lee to the Department of Forensic Sciences. He argues that neither Larimer, who purchased the substance, nor Agent Gulledge, who delivered the substance to the Department of Forensic Sciences, testified as to the handling and safeguarding of the substance. He is correct.
McGowan testified that he monitored the drug transaction between Lee and Larimer over a radio. When the transaction was completed, McGowan immediately went to a predetermined location and met Larimer. McGowan testified that he came into possession of the substance "today," referring to the day of trial. R. 66. Kelly Cannon testified that she received the substance in this case from Mike Gulledge, whom she knew from his numerous past dealings with her at the lab. When questioned on cross-examination about the chain of custody, she testified that the "submission form" provided with the substance did state who had recovered and who had custody of the substance until Mike Gulledge obtained the substance. Specifically, the following transpired on cross-examination:
 "Q. [By Ms. Roberts, defense counsel]: On your exhibit or in your files does it say where Officer Gulledge got his exhibit from? *Page 911 
 "A. I have a copy of the outside of that submission form. Yes it does have a location on the cover.
"Q. Okay. And does it say who it came from?
 "A. It says who it is recovered by, it also has the custody of that person to Mike Gulledge. You see it?
"Q. Yes, thanks. . . ."
R. 76.
Based on the record, we can identify the links in the chain of custody. McGowan testified that he heard Lee sell Larimer a substance alleged to be crack cocaine. The videotape confirmed that a transaction took place between Lee and Larimer in which Lee allegedly sold Larimer crack cocaine. Cannon testified that the form submitted with the substance indicated who recovered the substance — whom we know from the tape to be Larimer — and that Larimer delivered the substance to Gulledge. Cannon testified that Gulledge delivered the substance to the lab for testing. This is essentially all of the testimony contained in the record concerning the chain of custody for the substance in this case.
"In Ex parte Holton [590 So.2d 918 (Ala. 1991)], this Court examined the evidentiary foundation required to authenticate and identify demonstrative evidence:
 "`The chain of custody is composed of "links." A "link" is anyone who handled the item. The State must identify each link from the time the item was seized. In order to show a proper chain of custody, the record must show each link and also the following with regard to each link's possession of the item: "(1) [the] receipt of the item; (2) [the] ultimate disposition of the item, i.e., transfer, destruction, or retention; and (3) [the] safeguarding and handling of the item between receipt and disposition." Imwinklereid, The Identification of Original, Real Evidence, 61 Mil. L.Rev. 145, 159 (1973).
 "`If the State, or any other proponent of demonstrative evidence, fails to identify a link or fails to show for the record any one of the three criteria as to each link, the result is a "missing" link, and the item is inadmissible. If, however, the State has shown each link and has shown all three criteria as to each link, but has done so with circumstantial evidence, as opposed to the direct testimony of the "link," as to one or more criteria or as to one or more links, the result is a "weak" link. When the link is "weak," a question of credibility and weight is presented, not one of admissibility.
"590 So.2d at 920; see also Ex parte Cook, 624 So.2d 511, 513
(Ala. 1993).
"This Court also stated in Ex parte Holton:
 "`Proof of [an] unbroken chain of custody is required in order to establish sufficient identification of the item and continuity of possession, so as to assure the authenticity of the item. In order to establish a proper chain, the State must show to a "reasonable probability that the object is in the same condition as, and not substantially different from, its condition at the commencement of the chain.". . .
"`. . . .
 "'. . . A sealed envelope was adequate circumstantial evidence to establish the handling and safeguarding of the item . . . as authenticated.
"590 So.2d at 919-20 (citations omitted).
 "Certain provisions of the new Alabama Rules of Evidence deal with the necessity for laying a foundation for the admission of demonstrative evidence. . . . [W]e note that the commentary to Rule 901 states the same principles of law that are set out in the Holton opinion."
Kennedy v. State, 690 So.2d 1222, 1223 (Ala. 1996) (footnote omitted). *Page 912 
In the instant case, there were clearly missing links in the State's chain of custody. There is no evidence, either direct or circumstantial, reflecting what Larimer did with the substance he purchased from Lee or reflecting how Larimer handled and safeguarded the substance while it was in his possession before it was delivered to Gulledge. There was no evidence reflecting that the substance was ever sealed in an evidence envelope or safeguarded in any way by Larimer. There is no evidence, either direct or circumstantial, reflecting what Gulledge did with the substance while it was in his possession or how Gulledge handled or safeguarded the substance while it was in his possession. There is no evidence reflecting that the substance was ever sealed in an evidence envelope or safeguarded in any way by Gulledge. Moreover, Cannon did not state that the substance was in a sealed condition when she received it. Her testimony reflected only that she sealed the envelope the evidence was in after she completed her testing. To reiterate, there is no testimony reflecting where the substance was kept or how it was kept before it was presented to Cannon. Nor was there any evidence that when the substance was received at the lab it was packaged so as to be tamper-resistant.
In Ex parte Cook, 624 So.2d 511 (Ala. 1993), the Alabama Supreme Court held that a link in the chain of custody of certain evidence (cigarette butts and socks) was missing even though Birmingham police officer Belinda Weldon testified that she had directed another officer to collect the evidence and had watched the officer collect it. The Alabama Supreme Court held that the evidence was inadmissible because "the State did not establish when these items were sealed or how they were handled or safeguarded from the time they were seized until [Phyllis] Rowland [, a forensic serologist at the Alabama Department of Forensic Sciences] received them." 624 So.2d at 514. The Alabama Supreme Court said that the evidence in question "was inadmissible underHolton." 624 So.2d at 514. Thus, in Lee's case, as in the Cook
case, the State failed to show for the record each "`of the three criteria as to each link[; thus,] the result is a "missing" link, and the item is inadmissible.'" Harrison v. State, 650 So.2d 603,605 (Ala.Cr.App. 1994) (quoting Ex parte Holton, 590 So.2d 918,920 (Ala. 1991)).
Moreover, this is not a case where a witness specifically identified the evidence and where the condition of the evidence was not an issue in the case. Section 12-21-13, Ala. Code 1975 provides:
 "Physical evidence connected with or collected in the investigation of a crime shall not be excluded from consideration by a jury or court due to a failure to prove the chain of custody of the evidence. Whenever a witness in a criminal trial identifies a physical piece of evidence connected with or collected in the investigation of a crime, the evidence shall be submitted to the jury or court for whatever weight the jury or court may deem proper. The trial court in its charge to the jury shall explain any break in the chain of custody concerning the physical evidence."
In Land v. State, 678 So.2d 201 (Ala.Cr.App. 1995), aff'd,678 So.2d 224 (Ala. 1996), a case which appears to rely on §12-21-13, this court ruled that where a witness can specifically identify the evidence, and its condition is not an issue in the case, then the State is not required to establish a complete chain of custody in order for the evidence to be admitted into evidence. We stated: "The eyeglasses were admissible without establishing a chain of custody because [the testifying officer] was able to specifically identify them, and their condition was not an issue in the case." Land, 678 So.2d at 210. However, the Land opinion distinguished Cook stating:
 "The State was required to establish a complete chain of custody for the cigarette butts and socks collected at the scene of the homicide in Ex parte Cook, 624 So.2d 511 (Ala. 1993), but not for the *Page 913 
eyeglasses collected at the scene of this homicide because the items in Cook, unlike the eyeglasses here, were subjected to scientific analysis and their condition was at issue.
Land v. State, 678 So.2d at 210.
The evidence in Lee's case cannot be admissible under §12-21-13, Ala. Code 1975, because no witness directly testified at trial that the substance tested by Cannon was the same substance Lee had sold to Larimer. Moreover, the condition of the substance, i.e., whether it was a cocaine, was the crux of the case. Therefore, because there were missing links in the chain of custody, the trial court erred in admitting the substance into evidence over Lee's chain-of-custody objection. Additionally, according to Lee, the trial court erred by attempting to give a chain-of-custody instruction to the jury during the trial. The following transpired during the State's examination of Kelly Canon:
 "Q. [Ms. Mattingly, the prosecutor]: . . . Have you ever chemically analyzed substances to determine whether or not [they contain] a controlled substance?
"A. [Ms. Canon]: Yes, I have.
"MS. ROBERTS [defense counsel]: Your Honor, may we approach?
"THE COURT: Yes.
 "(Whereupon, the following Bench Conference was held:)
 "MS. ROBERTS: This case not — no foundation, no basis for it. There's been no chain of custody established to [Ms. Canon]. I don't see how on earth she can testify to any substance they got with relevance.
"THE COURT: She can testify to the substance in that bag?
"MS. MATTINGLY: She can.
 "MS. ROBERTS: Your Honor, there's been no — Your Honor, those things have to do with this exhibit and she did not test this, the names on here.
"MS. MATTINGLY: But this one, this is the one.
 "MS. ROBERTS: No chain of custody whatsoever to establish what is on that report.
 "MS. MATTINGLY: She can testify, Your Honor, as to the signature and the officer she go it from.
"THE COURT: Overrule the objection.
 "MS. ROBERTS: Your Honor, there's been no chain of custody, where it came from at all.
"(Whereupon, the Bench Conference was concluded.)
 "THE COURT: Ladies and gentlemen of the jury: You have heard the evidence as to how this was derived and it is up to you to consider whether the chain is sufficient enough to justify this evidence for your review.
 "MS. ROBERTS: Your Honor, I believe that is not a jury question, but rather a decision for the Court.
"THE COURT: I don't care what you believe.
"MS. ROBERTS: Thank you, Your Honor."
R. 71-72. Lee's assertion is correct. "The legal question always presented in this kind of case is whether the evidence is what it is represented to be. `The question of authenticity or proper identification is, in the first instance, for the trial judge as a preliminary matter.' Commentary to Rule 901, Ala.R.Evid."Kennedy, 690 So.2d at 1224 (footnote omitted). It was for the trial court to first determine whether the State had sufficiently shown that the evidence was what it was alleged to be, i.e., whether it was authenticated. Here, the State did not prove that the evidence was the substance sold by Lee; thus, the trial court should not have admitted it. Moreover, this charge did not explain the break in the chain of custody as required under §12-21-13, Ala. Code 1975.
Lee's conviction in case no. CC-98-1132 must also be reversed. The trial court's judgments are reversed and this cause is remanded with directions for the *Page 914 
trial court to vacate Lee's three convictions.
REVERSED AND REMANDED.
Long, P.J., and McMillan and Fry, JJ., concur; Baschab, J., recuses herself.
[1] Section 12-21-300 reads as follows:
 "(a) In any criminal case, or juvenile or family court case which is of a criminal nature, the prosecuting authority may offer a certificate of analysis as described below, in lieu of direct testimony. The court shall receive as evidence the certificate of analysis from any of the following:
 "(1) A person performing an analysis or examination in any laboratory operated by the Alabama Department of Forensic Sciences or authorized by the department to conduct an analysis or examination of the type performed.
 "(2) A person performing an analysis or examination in any criminalistics laboratory established pursuant to federal law.
 "(b) To be admissible pursuant to this section, a certificate of analysis shall contain all of the following:
 "(1) The date and time the evidence was delivered to the facility.
 "(2) The name of the person making the delivery, and the name of the person receiving the delivery.
"(3) A brief description of the evidence.
"(4) The type of examination or analysis requested.
 "(5) The name of the person making the examination or analysis.
"(6) The date or dates of the examination or analysis.
"(7) The results of the examination or analysis.
"The certificate of analysis shall give the name and address of the facility in which the examination or analysis was made, and it shall be signed by and sworn to as true and correct, under penalty of law, by the person making the examination or analysis."