954 So.2d 611 (2006)
Terrance E. PRUITT
v.
STATE of Alabama.
CR-04-2495.
Court of Criminal Appeals of Alabama.
June 30, 2006.
Rehearing Denied August 11, 2006.
Certiorari Denied October 13, 2006.
*612 Thomas M. Goggans, Montgomery, for appellant.
Troy King, atty. gen., and Yvonne A.H. Saxon, asst. atty. gen., for appellee.
Alabama Supreme Court 1051688.
WISE, Judge.
The appellant, Terrance E. Pruitt, pleaded guilty to obstructing justice using a false identity, a violation of § 13A-8-194, Ala.Code 1975; unlawful possession of marijuana in the first degree, a violation of § 13A-12-213(a)(2), Ala.Code 1975; unlawful use or possession with the intent to use drug paraphernalia, a violation of § 13A-12-260(c), Ala.Code 1975; and unlawful possession of a controlled substance, cocaine, a violation of § 13A-12-212(a)(1), Ala.Code 1975. Pruitt was sentenced, as a habitual offender with one prior felony conviction, to 10 years' imprisonment for the cocaine-possession, marijuana-possession, and obstruction-of-justice convictions, and to one year in prison for the drug-paraphernalia conviction, the sentences to run concurrently. Before entering his guilty plea, Pruitt specifically reserved the right to appeal the trial court's denial of his motion challenging the State's use of the certificate of analysis to prove the composition of the substances. This appeal followed.
Because Pruitt does not challenge the factual allegations giving rise to the convictions, we note simply that the State's factual basis indicated that law-enforcement officers initiated a traffic stop on Pruitt's vehicle on June 4, 2004, and discovered a set of digital scales and what was later determined to be approximately four grams of marijuana and approximately four grams of cocaine, and that Pruitt attempted to conceal his identity by providing a false name to the officers.
Pruitt contends that the trial court erred in denying his challenge to the State's use of the certificate of analysis in lieu of live testimony from the forensic scientist who performed the analysis on the drug evidence.

I.
Pruitt first argues that the State failed to provide at least 40 days' notice of its intent to use the certificate of analysis as provided by § 12-21-301, Ala.Code 1975.[1]
Section 12-21-301, Ala.Code 1975, provides:
"The party seeking to introduce a certificate of analysis shall not less than 40 days prior to the commencement of the hearing or trial, give written notice to all parties of intent to offer proof by a certificate of analysis. The notice shall include a copy of the certificate of analysis."
Additionally, the Alabama Code provides the following procedure by which a party can request a hearing to show cause why the person performing the analysis of the substance should be subject to a subpoena for cross-examination:
"(a) The party against whom the certificate is offered may request, not later than 30 days prior to the commencement of the hearing or trial, a hearing to show *613 cause why a subpoena should be issued for cross-examination of the person who performed the examination or analysis.
"(b) The request shall be in writing and shall contain a certification that the requesting party intends in good faith to conduct the cross-examination. The request shall also include a statement of the basis upon which the requesting party intends to challenge the findings contained in the certificate of analysis. The court shall grant the request for subpoena only for good cause shown. Good cause shall not include a challenge to the findings contained in the certificate of analysis, unless the requesting party first establishes a legitimate basis for the challenge. If the request for subpoena is granted, and the requesting party subsequently fails to conduct the cross-examination previously certified to, the court shall assess against the requesting party, all necessary and reasonable expenses incurred for the attendance in court of the certifying witness."
Section 12-21-302, Ala.Code 1975.
In Lee v. State, 748 So.2d 904 (Ala.Crim. App.1999), this Court addressed a similar issue, as follows:
"Specifically, Lee argues that because the State failed to file notice more than 40 days before trial of its intent to offer proof of the test results by a certificate of analysis, the certificate of analysis should not have been admitted into evidence.
"The State conceded that `notice' had not been filed, but it asserted that defense counsel was provided a copy of the certificate of analysis in the discovery materials sent to the defense the Monday before trial began on Wednesday. At this juncture, the defense agreed that discovery had been provided Monday morning. The trial court overruled the defense's objection to the admission of the certificate. A few moments later, when the State requested the results of the analysis from its witness, defense counsel asked to be allowed to approach the bench and stated the following to the trial court:
"`Your Honor, this is the extent of my discovery that I received on Monday in this particular case. I was confused. I thought the other case is the one. Yes, sir. That was this is [(sic)] the indictment for Mr. Pickren's case. I did not receive a certificate of analysis ever or I did not receive it Monday.
"`And, Your Honor, the statute § 12-21-301 states specifically that parties should receive a certificate of analysis not less than 40 days [before] the hearing or trial.'
"R. 28. The trial court again overruled the objection and the certificate of analysis was admitted into evidence. That certificate showed that the substance in case no. CC-98-1131 was cocaine.
"The State contends on appeal that any error in this regard was harmless error because, it says, defense counsel was aware of its intent to introduce the certificate of analysis, a copy of which had been provided to the defense in discovery. Therefore, according to the State, the defense should not have been surprised by the introduction of the certificate. This argument overlooks defense counsel's assertion that he did not receive a certificate of analysis before trial. This argument also overlooks the statutory requirement that the party seeking to introduce the certificate `shall not less than 40 days prior to the commencement of the hearing or trial' provide notice to the other party of its intent to rely on the certificate instead *614 of direct testimony to prove that the substance was an illegal substance. Here, if the production of discovery was notice of the State's intent to use the certificate, as it asserts, it was provided two days before trial. Moreover, the State made no assertion before trial that it intended to rely on the certificate of analysis to prove that the substance was illegal.
"The statute was not complied with; thus, the certificate of analysis was improperly admitted into evidence. Therefore, the State did not prove beyond a reasonable doubt that Lee sold a controlled substance to Richardson and Vining in case no. CC-98-1131. The convictions in case no. CC-98-1131 for two counts of distribution of a controlled substance must be reversed."
748 So.2d at 909-10.
However, the facts here are distinguishable from those in Lee. Here, the State provided notice approximately 27 days before the suppression hearing and plea proceeding. Further, it is unclear from the record whether the trial would have been conducted on the same day as the plea proceeding had Pruitt not withdrawn his not-guilty plea to plead guilty.
Additionally, there is no indication in the record that Pruitt set forth a legitimate basis to challenge the use of the certificate of analysis in lieu of live testimony in his case.[2] Nor does he argue that the timing of the notice prejudiced him in any way. To the contrary, his argument is simply that because the State did not provide the requisite 40 days' notice, the certificate of analysis was inadmissible as a matter of law.
The trial court stated that Pruitt was free to subpoena the chemist if he chose to do so. The trial court further concluded that the 40-day notice requirement in § 12-21-301 was "simply procedural" and that, in Pruitt's case, the State's failure to comply with that requirement did not put Pruitt "in any disadvantage or violate any [of Pruitt's] right[s]." (R. 34.) Having reviewed the record and applicable legal authority, we agree with the trial court. As this Court recently stated in Brown v. State, 939 So.2d 957, 960 (Ala.Crim.App.2005), "[t]he purpose behind [the time requirement in § 12-21-302], as well as the time requirement in § 12-21-301 is apparent: to allow sufficient time to secure the presence of the forensic scientist in those cases in which his or her presence is necessary." As noted above, Pruitt has not argued that he was prejudiced by the State's noncompliance with the 40-day statutory notice requirement, nor does the record indicate that any such prejudice existed in this case. Under the facts of this case, the State's failure to comply with the 40-day requirement in § 12-21-301 was harmless. To the extent that language in Lee, supra, suggests that noncompliance with the 40-day requirement in § 12-21-301 can never be harmless, that holding is overruled.[3] For these reasons, Pruitt is not entitled to any relief on this claim.

*615 II.
Pruitt also argues that the State's reliance on the certificate of analysis in lieu of calling the forensic scientist to testify violated his Sixth Amendment right to confrontation in light of the United States Supreme Court's opinion in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).[4]
In Crawford, the United States Supreme Court held that the Confrontation Clause prohibited the admission of testimonial hearsay statements in a criminal trial unless the hearsay declarant is unavailable to testify and the accused has had a prior opportunity to cross-examine the witness.
"Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay lawas does [Ohio v.] Roberts, [448 U.S. 56 (1980),] and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination. We leave for another day any effort to spell out a comprehensive definition of `testimonial.' Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed."
541 U.S. at 68, 124 S.Ct. 1354 (footnote omitted).
In Perkins v. State, 897 So.2d 457 (Ala. Crim.App.2004), this Court interpreted Crawford to conclude that an autopsy report prepared by the Alabama Department of Forensic Sciences was nontestimonial in nature, was not violative of the Confrontation Clause, and was therefore admissible under the business-record exception to the hearsay rule. See Perkins, 897 So.2d at 464.
Although in a slightly different posture, we have addressed the impact of Crawford on the procedures set forth in § 12-21-300 et seq., Ala.Code 1975, in Brown, supra, as follows:
"In adopting § 12-21-300 et seq. the legislature clearly intended to reduce the burden on the Alabama Department of Forensic Sciences caused by the need for live testimony by its forensic scientists, and this Court is cognizant of the large number of cases currently before the department and of its limited resources. To have forensic scientists traveling across Alabama to testify in every case involving forensic evidence, even in those cases in which the opposing party has no intention of challenging the forensic evidence, would greatly reduce the amount of time those scientists have to actually conduct the examinations and analyses and would cause even more delays in the criminal justice system. It is equally apparent, however, that the legislature did not intend for certificates of analysis to be admissible in all cases, because it both limited the applicability of the statutes to certain cases and provided a method by which the opposing party could compel the attendance of the forensic scientist. Under § 12-21-302, the proper time for the *616 opposing party to raise an objection to the admission of a certificate of analysis and to compel the attendance of the forensic scientist is at least 30 days before trial. The purpose behind this time requirement, as well as the time requirement in § 12-21-301 is apparent: to allow sufficient time to secure the presence of the forensic scientist in those cases in which his or her presence is necessary. Crawford, in addressing the admissibility of testimonial hearsay statements under the Confrontation Clause, does not affect these time requirements, and because Brown did not comply with the time requirement in § 12-21-302that a challenge to the admissibility of the certificate of analysis be raised at least 30 days before trial whether Crawford impacts the other provisions of § 12-21-302, i.e., that the opposing party must establish a legitimate basis for wanting to cross-examine the forensic scientist and that if the opposing party fails to conduct the cross-examination, the costs of bringing the scientist to court will be taxed to the opposing party, need not be determined in this case."
Brown v. State, 939 So.2d at 960-61.[5]
We now hold that the use of a certificate of analysis does not violate the Confrontation Clause in this case. This determination is not inconsistent with the United States Supreme Court's holding in Crawford, because we conclude that a certificate of analysis offered pursuant to § 12-21-300 et seq. is nontestimonial in nature and is admissible under the business-record hearsay exception. A number of other states have reached similar conclusions. See, e.g., Commonwealth v. Verde, 444 Mass. 279, 827 N.E.2d 701 (2005) (certificate of analysis nontestimonial evidence that is admissible under business-record exception to the hearsay rule and is not violative of the Confrontation Clause); and State v. Cunningham, 903 So.2d 1110 (La. 2005) (certificates of analysis not violative of Confrontation Clause as discussed in Crawford where statutory provisions allowing for certificates of analysis provide notice to the accused that certificates will be used and opportunity for accused to subpoena the person who performed the analysis).
In reaching a similar conclusion regarding autopsy reports in Perkins, this Court stated:
"Unlike the hearsay in Crawford v. Washington, the hearsay at issue in this case is nontestimonial in naturean autopsy report on the victim, Wysteria Mathews. As the Court noted in White[ v. Illinois, 502 U.S. 346 (1992)]: `[w]here [the] proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied.' 502[503] U.S. at 356, 112 S.Ct. 1360.
"Both Alabama and federal caselaw have recognized that the business records exception is a firmly rooted exception to the hearsay rule. See, e.g., McNabb v. State, 887 So.2d 929, 969 (Ala.Crim.App.2001); Ohio v. Roberts, 448 U.S. [56,] 66 n. 8, 100 S.Ct. 2531 [(1980)]. Moreover, under Alabama law, `An autopsy report made in the regular course of business is admissible under the business records exception.' 2 Charles W. Gamble, McElroy's Alabama Evidence § 254.01(18) (5th ed.1996) (footnote omitted). See also Adams v. State, [Ms. CR-98-0496, August 29, *617 2003] ___ So.2d ___, ___ (Ala.Crim. App.2003); Baker v. State, 473 So.2d 1127, 1129 (Ala.Crim.App.1984). The results of Dr. Embry's autopsy and the supporting materials are business records, which bear the earmark of reliability or probability of trustworthiness and further the `"integrity of the fact-finding process,"' see Coy v. Iowa, 487 U.S. 1012, 1020, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988) (quoting Kentucky v. Stincer, 482 U.S. 730, 736, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987)); because this evidence satisfies the core value of the Confrontation Clause, the State did not have to establish Dr. Embry's unavailability."
897 So.2d at 464. Much like an autopsy report, certificates of analysis prepared by the Alabama Department of Forensic Sciences are business records grounded in inherently trustworthy and reliable scientific testing, rather than opinionated assertions.[6] As the Massachusetts Supreme Court noted in Commonwealth v. Verde, supra, a certificate of analysis is not based on speculation, opinion, or guesswork, but instead is founded in scientific testing to determine the physical and chemical composition of the substance and the amount or quantity of the substance. Thus, this Court's holding in Perkins is extended to encompass certificates of analysis provided by the Alabama Department of Forensic Sciences. For these reasons, Pruitt is not entitled to any relief on this claim.
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
McMILLAN, P.J., and COBB and BASCHAB, JJ., concur. SHAW, J., concurs in part and concurs in the result in part, with opinion.
SHAW, Judge, concurring in part and concurring in the result in part.
I concur as to Part I of the main opinion. As to Part II, in light of the fact that the United States Supreme Court in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), left "for another day any effort to spell out a comprehensive definition of `testimonial,'" 541 U.S. at 68, 124 S.Ct. 1354, I cautiously agree that the admission of the certificate of analysis in this case, pursuant to Ala. Code 1975, § 12-21-300, would not have violated the Confrontation Clause.
In Crawford, the Court signaled that fact-based business records "by their nature were not testimonial." 541 U.S. at 56, 124 S.Ct. 1354. Picking up on this "window of insight" into the Justices' thinking,[7] the Massachusetts Supreme Court, in Commonwealth v. Verde, 444 Mass. 279, 282-84, 827 N.E.2d 701, 705-06 (2005), stated:
"Although the Court [in Crawford] left `for another day any effort to spell out a comprehensive definition of "testimonial,"' it provided that the term `applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations.' [Crawford v. Washington, 541 *618 U.S. 36] at 68, 124 S.Ct. 1354 [(2004)]. The Court noted that `[t]hese are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed.' Id. However, the Court also recognized that `[t]here were always exceptions to the general rule of exclusion' of hearsay evidence and that several were well established when the confrontation clause was enacted. Id. at 56, 124 S.Ct. 1354. Specifically, the Court suggested in dictum that a business or official record would not be subject to its holding as this exception was well established in 1791. Id.

". . . .
"Certificates of chemical analysis are neither discretionary nor based on opinion; rather, they merely state the results of a well-recognized scientific test determining the composition and quantity of the substance. . . .
"Furthermore, we do not believe that the admission of these certificates of analysis implicate `the principal evilat which the Confrontation Clause was directed . . . particularly its use of ex parte examinations as evidence against the accused.' Crawford, supra at 50, 124 S.Ct. 1354. The documentary evidence at issue here has very little kinship to the type of hearsay the confrontation clause intended to exclude, absent an opportunity for cross-examination. Id. at 51-53, 124 S.Ct. 1354. Rather, it is akin to a business or official record, which the Court stated was not testimonial in nature. Id. at 56, 124 S.Ct. 1354."
I find the rationale of the Massachusetts Supreme Court persuasive with respect to the interplay of certificates of analysis and the Confrontation Clause, although, admittedly, different approaches have been taken, and different conclusions reached, by other courts. See, e.g., Las Vegas v. Walsh, 124 P.3d 203 (Nev.2005), and People v. Rogers, 780 N.Y.S.2d 393, 8 A.D.3d 888 (2004). It is significant to me that certificates of analysis are not based on opinion but are grounded on scientific testing to determine the physical and chemical composition of the substance analyzed and the quantity of that substance. Because this Court holds that certificates of analysis are not testimonial in nature, the constitutionality of § 12-21-300 under Crawford is not implicated. Thus, the issues left open in Brown v. State, 939 So.2d 957 (Ala. Crim.App.2005)whether Crawford impacts the other provisions of § 12-21-302, i.e., that the opposing party must establish a legitimate basis for wanting to cross-examine the forensic scientist and that if the opposing party fails to conduct the cross-examination, the costs of bringing the scientist to court will be taxed to the opposing partyare now moot and need not be reached.
I note, however, that in Smith v. State, 898 So.2d 907 (Ala.Crim.App.2004) (Shaw, J., concurring in part and concurring in the result in part), and Perkins v. State, 897 So.2d 457 (Ala.Crim.App.2004) (Shaw, J., concurring in part and concurring in the result in part), I found it unnecessary to determine whether the autopsy reports in those cases were testimonial or nontestimonial in nature. Because the Crawford Court did not provide a comprehensive definition of testimonial evidence and, in fact, suggested several different approaches that might be used to determine whether certain evidence is testimonial, I remain concerned that this Court's holdings in Smith and Perkins were overly broad. Contrary to our holdings in those cases, it is not evident to me that all autopsy reports are nontestimonial in nature, without any consideration as to whether the findings in such reports are, on the one hand, fact-based, routine, descriptive, *619 and nonanalytical, or, on the other hand, include contested conclusions or opinions that are central to the determination of the corpus delecti. Other courts have read Crawford as requiring that a middle ground be reached with respect to autopsy reports, i.e., that the distinction be made between factual, routine, descriptive, and nonanalytical findings and contested opinions and conclusions drawn from objective findings. See, e.g., State v. Lackey, 280 Kan. 190, 120 P.3d 332 (2005); Rollins supra; and People v. Bryant, 27 A.D.3d 1124, 815 N.Y.S.2d 372 (2006). Because of my concerns in this respect, I must concur in the result as to Part II of the main opinion.
NOTES
[1] Claim II in Pruitt's brief.
[2] Pruitt did make general assertions in furtherance of his Confrontation Clause challenge to the use of the certificate of analysis, which we address in Part II of this opinion, but those assertions did not have any impact on the question of the State's noncompliance with § 12-21-301.
[3] We are not suggesting that the result reached in Lee was incorrect. To the contrary, under the facts of that case, the error was not harmless. Our overruling of Lee is limited to the extent that it holds that a reversal is mandated in any case in which the State is not in strict compliance with the 40-day notice requirement.
[4] Our research reveals that although a number of appellants have previously argued this issue to this Court, see, e.g., Brown v. State, supra, the issue had not been preserved. Thus, this case represents the first time that the question has been properly presented to this Court post-Crawford.
[5] Although we concluded in Brown that the challenge to the use of the certificate of analysis was not preserved for appellate review in that case, the above-cited excerpt is applicable to the present case.
[6] Further, as is noted above, in Alabama, if an accused wishes to challenge any perceived inaccuracies in the findings in the certificate of analysis, or in the methods by which the findings were reached, § 12-21-300 et seq. provide the mechanism by which he may do so; thus, an accused is not without recourse by which to cross-examine the preparer of the certificate of analysis.
[7] See Rollins v. State, 392 Md. 455, 897 A.2d 821 (2006) (noting that dicta of the United States Supreme Court is instructive of the Supreme Court's views and should not be dismissed out of hand when there is no clear precedent to the contrary).