848 So.2d 224 (2002)
Anthony Jermaine HALE f/n/a Anthony Jerome Hale
v.
STATE of Alabama.
1010196.
Supreme Court of Alabama.
October 11, 2002.
*226 John W. Beck, Fairhope, for appellant.
William H. Pryor, Jr., atty. gen., and E. Vincent Carroll, deputy atty. gen., for appellee.
PER CURIAM.
The defendant Anthony Jermaine Hale was indicted for, tried for, and convicted of unlawful distribution of marijuana (§ 13A-12-211, Ala.Code 1975). After a sentencing hearing, the trial court sentenced Hale, as an habitual felony offender with one prior felony conviction, to the maximum of life imprisonment (§ 13A-5-9(a)(2), Ala. Code 1975), plus an additional ten years' imprisonment pursuant to the schoolyard and public housing project enhancement statutes (§§ 13A-12-250 and 13A-12-270, Ala.Code 1975, respectively). Hale filed a postjudgment motion for a reduction of his sentence on the sole ground that it was *227 excessive, cruel, and unusual in violation of his federal and state constitutional rights. The trial court denied the motion. Upon Hale's appeal, the Court of Criminal Appeals recused, and the appeal was transferred to this Court pursuant to § 12-3-14, Ala.Code 1975.
The defendant Hale argues three issues, which we will explain, analyze, and decide. The conviction and sentence will be affirmed.

I. Chain of Custody

Procedural Facts
At trial, Hale objected to the offer of marijuana and a certificate of analysis, offered by the State pursuant to § 12-21-300 et seq., Ala.Code 1975, on the sole ground that the State had failed to prove the requisite chain of custody and thus had failed to establish a proper predicate for the admission of this evidence. Hale did not challenge this evidence on the ground that § 12-21-300 et seq. was unconstitutional either because it shifted the burden of proof to him, Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), or because it violated his right to confront witnesses against him, California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), or because it violated any other constitutional guarantee. Nor did Hale challenge the form or content of the certificate of analysis itself for noncompliance with § 12-21-300.

Issue
Hale argues that, because the two Department of Forensic Sciences ("DFS") employees who exercised custody over the evidence bag containing a plastic bag of plant material did not testify to the safeguarding and handling of the evidence bag and its contents at DFS and because the certificate of analysis itself does not prove the safeguarding and handling of this evidence at DFS, a link is missing from the chain of custody of this evidence, and the predicate for the admission of this evidence is insufficient.

Substantive Facts
Deputy Darryl Holsenback testified that he purchased a "plastic sandwich bag that contain[ed] what look[ed] like marijuana" from Hale for twenty dollars on June 4, 1998. Thereafter, Deputy Holsenback met Deputy Donnie Payne, who had monitored the sale through audio equipment, at a predetermined location, and they placed the plastic sandwich bag in an "evidence bag," sealed the evidence bag, and initialed it. Deputy Payne testified that he then gave the sealed evidence bag to Lieutenant Charlie Jones. Lieutenant Jones testified that, upon his receipt of the sealed evidence bag, he placed it in an evidence locker until he removed the bag to transport it to DFS in Mobile, Alabama. Once Jones arrived at DFS on June 11, 1998, he gave the sealed evidence bag to Gary Wallace, an employee at DFS. Jones stated that he retrieved the evidence bag from DFS on September 16, 1998. He said that the bag was "in the same or substantially the same condition as it was in when [he] first dropped it off." He stated that the bag, with a certificate of analysis attached to it, "had been opened across the bottom and then heat-sealed when the analysis was complete, [and] forensic analysts [had] placed initials across the seal where they had opened it."
The certificate of analysis admitted at trial reads:
 "ALABAMA DEPARTMENT OF FORENSIC SCIENCES
 "P.O. Box 7925 2451 Fillingim St.
 "Mobile, Alabama 36670 Mobile, Alabama 36617
 "(334) 471-7026 Facsimile (334) 470-5816
 "CERTIFICATE OF ANALYSIS
*228
 "BCSO C. Jones
 "P.O. Box 2199
 "Robertsdale, Al 36567
 "CASE NUMBER: 98MB04931 SUBMITTING CASE NUMBER: XXXXXXXXXX
 "SUSPECT(S) RACE SEX BIRTH DATE STATUS
 "Unknown B M [none given] Unk
 "SERVICE REQUESTED: Identify
 "CHAIN OF CUSTODY:
 "RELINQUISHED BY: RECEIVED BY: DATE TIME
 "C. Jones J.G. Wallace 06/11/1998 11:34
 "J.G. Wallace Dameon C. Hutto 06/11/1998 11:34
 "DESCRIPTION OF EVIDENCE:
 "One sealed plastic pouch containing one plastic bag containing plant material.
 "DATES OF ANALYSES: 06/24/1998-06/24/1998
 "RESULTS OF ANALYSES:
 "Laboratory analyses revealed the plant material to be Marihuana [sic]. Weight is 2.15 grams
 or 0.07 ounces.
 "Sworn to and subscribed before me this the 29th Day of June 1998 as a true and correct copy.
 "/s/Dameon C. Hutto /s/Sharon D. Campbell
 "Dameon C. Hutto Sharon D. Campbell
 "FORENSIC SCIENTIST Notary Public
 "Analyst My Commission expires 7/28/2001"
Neither Dameon Hutto nor Wallace testified at trial. No testimony or other evidence tended to prove that Hutto safeguarded the content of the inner bag against its being exchanged for other evidence, mixed with other evidence, or changed in condition.

Law
Section 12-21-13, Ala.Code 1975, provides:
"Physical evidence connected with or collected in the investigation of a crime shall not be excluded from consideration by a jury or court due to a failure to prove the chain of custody of the evidence. Whenever a witness in a criminal trial identifies a physical piece of evidence connected with or collected in the investigation of a crime, the evidence shall be submitted to the jury or court for whatever weight the jury or court may deem proper. The trial court in its charge to the jury shall explain any break in the chain of custody concerning the physical evidence."
(Emphasis added.) This statute, by its terms, applies only to "[p]hysical evidence connected with or collected in the investigation of" the charged crime. To invoke the statute the proponent of the evidence must first establish that the proffered physical evidence is in fact the very evidence "connected with or collected in the investigation." Moreover,
"[i]n Land v. State, 678 So.2d 201 (Ala.Cr.App.1995), aff'd, 678 So.2d 224 (Ala.1996), a case which appears to rely on § 12-21-13, this court ruled that where a witness can specifically identify the evidence, and its condition is not an issue in the case, then the State is not required to establish a complete chain of custody in order for the evidence to be admitted into evidence. We stated: `The eyeglasses were admissible without establishing a chain of custody because [the testifying officer] was able to specifically identify them, and their condition was not an issue in the case.' Land, 678 So.2d at 210....

*229 "`....'

"The evidence in Lee's case cannot be admissible under § 12-21-13, Ala.Code 1975, because no witness directly testified at trial that the substance tested by [DFS] was the same substance Lee had sold to Larimer. Moreover, the condition of the substance, i.e., whether it was a cocaine, was the crux of the case. Therefore, because there were missing links in the chain of custody, the trial court erred in admitting the substance into evidence over Lee's chain-of-custody objection."
Lee v. State, 748 So.2d 904, 912-13 (Ala. Crim.App.1999) (emphasis added). Because no witness in the case before us could otherwise identify the content of the inner bag in the evidence bag as marijuana, forensic testing was necessary. Therefore, § 12-21-13 does not apply to eliminate the need of the State to prove an unbroken chain of custody of the evidence bag and its contents.
"`Proof of [an] unbroken chain of custody is required in order to establish sufficient identification of the item and continuity of possession, so as to assure the authenticity of the item. In order to establish a proper chain, the State must show to a `reasonable probability that the object is in the same condition as, and not substantially different from, its condition at the commencement of the chain.'"
Ex parte Holton, 590 So.2d 918, 919-20 (Ala.1991) (citations omitted).
"`[W]hen dealing with a controlled substance, "the law is concerned with tracing the integrity of the substance only up through the completion of the analysis." Congo v. State, 409 So.2d 475, 479 (Ala.Crim.App.1981), cert. denied, 412 So.2d 276 (Ala.1982). "An alteration or substitution of the items after [the expert] finished [his] analysis and comparison would, therefore, have been immaterial." Blanco v. State, 485 So.2d 1217, 1219 (Ala.Crim. App.1986).'"
Land v. State, 678 So.2d 201, 212 (Ala. Crim.App.1995), aff'd, 678 So.2d 224 (Ala. 1996) (quoting Parker v. State, 587 So.2d 1072, 1089 (Ala.Crim.App.1991) (emphasis added)).
This Court has explained the links and elements of a valid chain of custody of evidence:
"The chain of custody is composed of `links.' A `link' is anyone who handled the item. The State must identify each link from the time the item was seized. In order to show a proper chain of custody, the record must show each link and also the following with regard to each link's possession of the item: `(1) [the] receipt of the item; (2) [the] ultimate disposition of the item, i.e., transfer, destruction, or retention; and (3) [the] safeguarding and handling of the item between receipt and disposition.' Imwinklereid, The Identification of Original, Real Evidence, 61 Mil. L.Rev. 145, 159 (1973).

"If the State, or any other proponent of demonstrative evidence, fails to identify a link or fails to show for the record any one of the three criteria as to each link, the result is a `missing' link, and the item is inadmissible. If, however, the State has shown each link and has shown all three criteria as to each link, but has done so with circumstantial evidence, as opposed to the direct testimony of the `link,' as to one or more criteria or as to one or more links, the result is a `weak' link. When the link is `weak,' a question of credibility and weight is presented, not one of admissibility."
Ex parte Holton, 590 So.2d at 920 (emphasis added); see also Ex parte Cook, 624 So.2d 511, 513 (Ala.1993). The sealed condition *230 of a bag containing an item or substance is circumstantial evidence of the safeguarding and handling of that item or substance by a particular link who receives the sealed bag, does not open it, and relinquishes it, still sealed, to the next link. Ex parte Holton, 590 So.2d at 920.
Section 12-21-300, Ala.Code 1975, provides:
"(a) In any criminal case, or juvenile or family court case which is of a criminal nature, the prosecuting authority may offer a certificate of analysis as described below, in lieu of direct testimony. The court shall receive as evidence the certificate of analysis from any of the following:
"(1) A person performing an analysis or examination in any laboratory operated by the Alabama Department of Forensic Sciences or authorized by the department to conduct an analysis or examination of the type performed.
"(2) A person performing an analysis or examination in any criminalistics laboratory established pursuant to federal law.
"(b) To be admissible pursuant to this section, a certificate of analysis shall contain all of the following:
"(1) The date and time the evidence was delivered to the facility.
"(2) The name of the person making the delivery, and the name of the person receiving the delivery.
"(3) A brief description of the evidence.
"(4) The type of examination or analysis requested.
"(5) The name of the person making the examination or analysis.
"(6) The date or dates of the examination or analysis.
"(7) The results of the examination or analysis.
"The certificate of analysis shall give the name and address of the facility in which the examination or analysis was made, and it shall be signed by and sworn to as true and correct, under penalty of law, by the person making the examination or analysis."
Section 12-21-301 provides:
"The party seeking to introduce a certificate of analysis shall not less than 40 days prior to the commencement of the hearing or trial, give written notice to all parties of intent to offer proof by a certificate of analysis. The notice shall include a copy of the certificate of analysis."
Section 12-21-302 provides:
"(a) The party against whom the certificate is offered may request, not later than 30 days prior to the commencement of the hearing or trial, a hearing to show cause why a subpoena should be issued for cross-examination of the person who performed the examination or analysis.
"(b) The request shall be in writing and shall contain a certification that the requesting party intends in good faith to conduct the cross-examination. The request shall also include a statement of the basis upon which the requesting party intends to challenge the findings contained in the certificate of analysis. The court shall grant the request for subpoena only for good cause shown. Good cause shall not include a challenge to the findings contained in the certificate of analysis, unless the requesting party first establishes a legitimate basis for the challenge. If the request for subpoena is granted, and the requesting party subsequently fails to conduct the cross-examination previously certified to, the court shall assess against the requesting party, all necessary and reasonable expenses incurred for the attendance *231 in court of the certifying witness."

Analysis
The testimony of Deputy Holsenback, Deputy Payne, and Lieutenant Jones, including their testimony to the sealing and the sealed condition of the evidence bag, identify all links in the chain of custody and prove the safeguarding and handling of the evidence by each link in the chain until the evidence bag was relinquished to Wallace at DFS, where Hutto analyzed the plant material and determined it to be marijuana. Section 12-21-300 preempts the traditional chain of custody predicate law for this evidence once it was received by DFS in this case.
On the one hand the certificate of analysis does not conform to the § 12-21-300 requirement that "it shall be signed and sworn to as true and correct." Hutto swore only that the certificate was "a true and correct copy." Of what he does not say. On the other hand, Hale did not challenge this defect or any other in the form or content of the certificate and did not challenge the § 12-21-300 et seq. statute itself. Therefore, Hale has effectively conceded the validity of the statute itself and the sufficiency of the certificate as compliance with § 12-21-300.
This Code section expressly declares that a compliant certificate of analysis will "be admissible." Thus, if DFS fulfills the requirements of § 12-21-300 and the State properly invokes the statute, it preempts or supplants the traditional requirements of the law for a predicate to admissibility consisting of proof of safeguarding and handling by the personnel at DFS. Therefore, the trial court did not err in admitting the certificate and the plant material with it.

II. Application of the Habitual Felony Offender Act

Facts
Before the sentencing hearing, the State gave Hale notice of intention to seek enhancement of Hale's sentence pursuant to the Habitual Felony Offender Act (§ 13A-5-9(a)(2), Ala.Code 1975) for a prior conviction of a felony committed by Hale. At the sentencing hearing, the State offered a case action summary of a 1996 conviction of Hale for unlawful distribution of a controlled substance as proof of the prior felony conviction. The case action summary did not show that Hale was treated as a youthful offender when he received the prior conviction. Hale did not object to the offer of the case action summary on any ground.

Issue
Hale argues that, because the case action summary of the prior conviction was not certified and did not indicate whether he was a youthful offender at the time of the conviction, the trial court erred in admitting the case action summary as proof of a prior felony conviction.

Law and Analysis
"The failure to object in the trial court to the State's method of proving or failure to prove prior convictions precludes consideration of that issue on appeal." Nichols v. State, 629 So.2d 51, 57-58 (Ala.Crim.App.1993) (citing Harrell v. State, 555 So.2d 257 (Ala.Crim.App.), aff'd, 555 So.2d 263 (Ala.1989); and Faircloth v. State, 471 So.2d 485 (Ala.Crim.App.1984), aff'd, 471 So.2d 493 (Ala.1985)). Further, "[w]hile a prior adjudication as a youthful offender cannot be used to enhance punishment under Alabama's Habitual Felony Offender Act, Ex parte Thomas, 435 So.2d 1324, 1326 (Ala.1982), the properly authenticated evidence of a prior felony conviction *232 need not indicate that the accused waived youthful offender treatment or was denied treatment as a youthful offender." Goodwin v. State, 516 So.2d 818, 821 (Ala. Crim.App.1986), writ quashed, 516 So.2d 821 (Ala.1987).
Because Hale did not object to the case action summary on any ground before the trial court, he has not preserved his arguments for appellate review. Nichols, supra; Harrell, supra; and Faircloth, supra. Furthermore, Hale's contention that the case action summary of his prior conviction was inadmissible on the ground that it did not indicate whether he was treated as a youthful offender is without merit.

III. Application of Sentencing Enhancements Pursuant to §§ 13A-12-250 and 13-12-270, Ala.Code 1975

Facts
Hale was tried and convicted in September 2000, and was sentenced in October 2000. At a sentencing hearing, the trial court heard the proof that the sale by Hale occurred within three miles of a school and within three miles of a public housing project. Hale did not object to this proof on any ground at the sentencing hearing. The trial court sentenced Hale to an additional ten years in prison pursuant to the schoolyard and public housing project sentence enhancement statutes (§§ 13A-12-250 and 13A-12-270, Ala.Code 1975, respectively). Although Hale filed a motion to reduce his total sentence of life plus ten years in prison on the ground that it was excessive, cruel, and unusual, he did not assert any other ground in his motion.

Issue
Hale argues that the trial court erred in enhancing his sentence pursuant to the schoolyard and public housing project sentence enhancement statutes because the facts necessary to support these sentence enhancements were not charged in the indictment and proven beyond a reasonable doubt to the jury, as, Hale argues, the recent rule of law in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), decided on June 26, 2000, requires. Specifically, he argues that the absence of allegations of the facts to support the sentence enhancements in the indictment deprived the trial court of jurisdiction to sentence him to the additional ten years pursuant to the sentence enhancement statutes.

Law and Analysis
In Poole v. State, 846 So.2d 370, 373 (Ala.Crim.App.2001), the Court of Criminal Appeals discussed and analyzed Apprendi as follows:
"... Apprendi pleaded guilty to two counts of second-degree possession of a firearm for an unlawful purpose and to one count of unlawfully possessing an `antipersonnel bomb.' A New Jersey statute provided that a sentence could be enhanced if the crime was motivated by `bias.' New Jersey sought to invoke this statute. After a hearing, the trial court, based on the testimony from the witness stand, found by a preponderance of the evidence that the crime was motivated by racial bias. The trial court then enhanced Apprendi's sentence. Apprendi specifically reserved the right to challenge this enhancement on appeal. Apprendi argued that due process required that the question whether the crime was motivated by bias be presented to a jury and proven beyond a reasonable doubt. The New Jersey Supreme Court upheld the enhanced sentence. The United States Supreme Court reversed. Citing earlier decisions, the United States Supreme Court stated:
"`. . . .
"`... Other than the fact of a prior conviction, any fact that increases the *233 penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in that case: "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt." [Jones v. United States,] 526 U.S. [227], at 252-253, 119 S.Ct. 1215 [(1999) ] (opinion of Stevens, J.); see also id., at 253, 119 S.Ct. 1215 (opinion of Scalia, J.).'
"530 U.S. at 485-90, 120 S.Ct. 2348 (emphasis added; footnotes omitted)....
". . . .
"... [C]onstitutional defects must be objected to in the trial court before we may review them on appeal. See Barrett v. State, 705 So.2d 529 (Ala.Crim. App.1996); Puckett v. State, 680 So.2d 980 (Ala.Crim.App.1996); Andersen v. State, 418 So.2d 967 (Ala.Crim.App. 1982); Hansen v. State, 598 So.2d 1 (Ala.Crim.App.1991); Cagle v. State, 504 So.2d 1225 (Ala.Crim.App.1987); Crosslin v. State, 540 So.2d 98 (Ala.Crim.App. 1988). Therefore, before this Court will review an alleged Apprendi violation, the defendant must object in the trial court. ...
". . . .
"... [T]he Apprendi holding implies that the failure to allege in the indictment the location of the crime does not affect the validity of the indictment, i.e., does not rise to the level of a jurisdictional defect. Had the defect in Apprendi amounted to a jurisdictional defect that would invalidate the indictment, a reviewing court would, ex mero motu, be charged with noticing the defect. See Ex parte Hargett, 772 So.2d 481 (Ala.Crim.App.1999). The Supreme Court did not hold in Apprendi that the underlying conviction was due to be vacated."
Poole, 846 So.2d at 373-87 (emphasis added). Thus, Poole holds that the absence of sentence enhancement allegations from the indictment does not deprive the trial court of jurisdiction to impose the enhancements. We approve and adopt this holding and the rationale of the Poole court for this holding.
Therefore, Hale cannot prevail on his argument that the failure of the State to charge the sentence enhancement factors in his indictment deprived the trial court of jurisdiction to enhance his sentence. Furthermore, because Hale does not argue that Apprendi created a new rule of criminal procedure to apply retroactively, see Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), and Ex parte Beavers, 598 So.2d 1320 (Ala.1992), and because he did not argue before the trial court at any time that the application of the sentence enhancements violated his rights to due process and to a trial by jury, he has waived appellate review of these arguments. Poole, supra, and the cases cited therein.

IV. Conclusion
None of the defendant Hale's arguments warrants a reversal of the conviction and sentence. Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
HOUSTON, SEE, LYONS, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
MOORE, C.J., and JOHNSTONE, J., concur in part and dissent in part.
*234 MOORE, Chief Justice (concurring in part and dissenting in part).
I join in Justice Johnstone's special writing only as to his argument that the sentence enhancements in this case, or in any other case, should be alleged in the indictment because the facts necessary to trigger the enhancements are, in effect, elements of the crime. In all other respects, I concur with the main opinion.
JOHNSTONE, Justice (concurring in part and dissenting in part).
But for two exceptions, I concur in the main opinion. Specifically, I concur in the introduction and in Part I, "Chain of Custody," and Part II, "Application of the Habitual Felony Offender Act." Consequently, I concur in affirming the conviction although not the sentence. While I further agree that, under the procedural and legal posture of this case, life in prison was within the legal range of penalties, I will offer some observations about this sentence at the very end of this special writing.
My first exception is that I respectfully dissent from the rationale and holdings of Part III, "Application of Sentencing Enhancements Pursuant to §§ 13A-12-250 and 13A-12-270, Ala.Code 1975." My second exception is a consequence of the first: I respectfully dissent from affirming the sentence. I would reverse and remand for resentencing without application of §§ 13A-12-250 and 13A-12-270 and without the two consecutive five-year enhancements pursuant to those two Code sections.
In the case before us, Hale tacitly waived all nonjurisdictional objections to the imposition of the five-year schoolyard enhancement pursuant to § 13A-12-250 and the five-year public housing project enhancement pursuant to § 13A-12-270. However, Hale argues that the absence from the indictment of allegations of facts to support the schoolyard and public housing project enhancements deprived the trial court of jurisdiction to add those enhancements to his sentence. I respectfully submit that he is right.
The analysis is simple. It consists of three cardinal propositions.
First, Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), hold that sentence enhancement factors applied to increase a defendant's penalty above the maximum prescribed by the statute defining the offense charged against the defendant are essential elements of a greater offense. Second, Alabama state law requires that all essential elements be pleaded in the indictment. Third, by Alabama state law, the absence of any allegation of or reference to the schoolyard and public housing project sentence enhancement statutes or factors in the marijuana distribution indictment in this case deprived the trial court of jurisdiction to impose any enhancement on the bases of those enhancement statutes and factors. This special writing will demonstrate each of these three cardinal propositions in sequence.
Apprendi initially explains some legal history:
"[F]acts that expose a defendant to a punishment greater than that otherwise legally prescribed were by definition `elements' of a separate legal offense."
Apprendi, 530 U.S. at 483 n. 10, 120 S.Ct. 2348 (emphasis added).
"The State had posited in Mullaney [v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975),] that requiring a defendant to prove heat-of-passion intent to overcome a presumption of murderous intent did not implicate [In re] *235 Winship, [397 U.S. 358, 90 S.Ct. 1068 (1970),] protections because, upon conviction of either offense, the defendant would lose his liberty and face societal stigma just the same. Rejecting this argument, we acknowledged that criminal law `is concerned not only with guilt or innocence in the abstract, but also with the degree of criminal culpability' assessed. 421 U.S., at 697-98, 95 S.Ct. 1881. Because the `consequences' of a guilty verdict for murder and for manslaughter differed substantially, we dismissed the possibility that a State could circumvent the protections of Winship merely by `redefin[ing] the elements that constitute different crimes, characterizing them as factors that bear solely on the extent of punishment.' 421 U.S., at 698."
Apprendi, 530 U.S. at 484-85, 120 S.Ct. 2348 (footnote omitted) (emphasis added to "the elements"). The Apprendi Court then holds:
"[W]hen the term `sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict. Indeed, it fits squarely within the usual definition of an `element' of the offense."

Apprendi, 530 U.S. at 494 n. 19, 120 S.Ct. 2348 (emphasis added). Ring, supra, explains:
"We held that Apprendi's sentence violated his right to `a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.' Id., at 477, 120 S.Ct. 2348 (quoting United States v. Gaudin, 515 U.S. 506, 510, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995)). That right attached not only to Apprendi's weapons offense but also to the `hate crime' aggravating circumstance."

536 U.S. at 602, 122 S.Ct. at 2439 (emphasis added). Ring then adopts the Apprendi holding as well as Justice Thomas's concurrence to like effect:
"`[W]hen the term "sentence enhancement" is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict.'; [530 U.S.], at 495, 120 S.Ct. 2348. `[M]erely because the state legislature placed its hate crime sentence enhancer within the sentencing provisions of the criminal code does not mean that the finding of a biased purpose to intimidate is not an essential element of the offense.' (internal quotation marks omitted); see also id., at 501, 120 S.Ct. 2348, (THOMAS, J., concurring) (`[I]f the legislature defines some core crime and then provides for increasing the punishment of that crime upon a finding of some aggravating fact[,] ... the core crime and the aggravating fact together constitute an aggravated crime, just as much as grand larceny is an aggravated form of petit larceny. The aggravating fact is an element of the aggravated crime.')."

536 U.S. at 605, 122 S.Ct. at 2441 (emphasis added). The Ring Court then holds: "Arizona's enumerated aggravating factors operate as `the functional equivalent of an element of a greater offense,' Apprendi, 530 U.S., at 494, n. 19." 536 U.S. at 609, 122 S.Ct. at 2443.
Second, Alabama state law requires that "[a]n indictment must include all of the essential elements that constitute the offense, and it must not leave any element open to inference." Lanier v. State, 733 So.2d 931, 936 (Ala.Crim.App.1998) (citing Heidelberg v. State, 575 So.2d 621 (Ala. *236 Crim.App.1991)). "Failure to charge an offense is the kind of defect involved in due process of law and it cannot be waived. Although the law does not compel a `ritual of words' in an indictment, `[t]he omission of an element of the crime, however, is not a mere formality that may be waived.' `An indictment that fails to allege each material element of an offense fails to charge that offense.'" Barbee v. State, 417 So.2d 611, 613 (Ala.Crim.App.1982) (citations omitted).
Third, by Alabama state law, "[f]ailure to allege an essential element of the charged offense is a jurisdictional defect, and the failure to raise the defect at trial or on direct appeal does not constitute a waiver." Ex parte Lewis, 811 So.2d 485, 487 (Ala.2001) (citing Byrd v. State, 763 So.2d 987 (Ala.Crim.App.2000), and Heidelberg, supra). "A valid indictment is the source of the subject matter jurisdiction to try a contested criminal case. Absent a valid indictment, a trial court would lack subject matter jurisdiction to try, to convict, or to sentence a defendant in a contested criminal case." Ash v. State, 843 So.2d 213, 216 (Ala.2002) (citations omitted).
In the case before us, the particular indictment at issue vested the trial court with jurisdiction to try, to convict, and to sentence Hale for unlawful distribution of marijuana as, and only as, defined and punished by § 13A-12-211 and § 13A-5-6(a)(2). At sentencing, the State invoked the Habitual Felony Offender Act, § 13A-5-9(a)(2), Ala.Code 1975, and proved one prior felony conviction; Hale did not preserve any valid objection. Thus, the trial court had jurisdiction to sentence Hale within the range of ten years, to life in prison. See § 13A-12-211(b), § 13A-5-9(a)(2), and § 13A-5-6(a)(1).
"The sentence imposed following conviction of a crime must conform to the statute and cannot exceed the term prescribed by law.... When the court imposes sentence in excess of that authorized by statute, it exceeds its jurisdiction, and the sentence is consequently void." Ferguson v. State, 565 So.2d 1172, 1173 (Ala.Crim. App.1990) (citing Ex parte McKivett, 55 Ala. 236 (1876); City of Birmingham v. Perry, 41 Ala.App. 173, 125 So.2d 279 (1960); 21 Am. Jr.2d Criminal Law § 237 (1981); and Ex parte Brannon, 547 So.2d 68 (Ala.1989)). Because Hale's indictment neither alleged the schoolyard and public housing project sentence enhancement factors nor even cited the enhancement statutes, § 13A-12-250 and § 13A-12-270, the trial court lacked jurisdiction to apply those statutes to enhance Hale's sentence above the life-in-prison maximum for the commission of the Class B felony of distribution of marijuana after conviction of a single prior felony within the ambit of the Habitual Felony Offender Act. § 13A-12-211(b), § 13A-5-9(a)(2), and § 13A-5-6(a)(1).
Thus, the schoolyard and public housing project enhancements of Hale's sentence are void. Therefore, I respectfully submit that we should reverse Hale's sentence and should remand this cause for resentencing.
Hale did not argue to us that his sentence of life in prison plus ten years violated his Eighth Amendment, United States Constitution, guarantee against cruel and unusual punishment. See Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910), Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), and Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). Nonetheless, wise public officials may benefit the public by pondering the ramifications of this sentence and like sentences, if not for moral reasons, at least for practical reasons.
*237 Hale has received his sentence for selling 2.15 grams, or .07 ounces, of marijuana after having already been convicted of distributing some controlled substance. The record does not reveal the quantity or identity of the controlled substance Hale distributed the first time. The amount of marijuana Hale sold to receive the sentence now before us is enough to make four or five average-sized marijuana cigarettes. State v. Laurino, 108 Ariz. 82, 83, 492 P.2d 1189, 1190 (1972) (the average weight of a marijuana cigarette is "a half a gram").
The August 10-16, 2002, issue of The Economist magazine presents and analyzes some statistics on the criminal justice system in the United States. About 2,000,000 Americans are in state and federal prisons. "A Stigma That Never Fades," The Economist, August 10-16, 2002, at 25. About 4,500,000 more are on parole or probation. Id. Another 3,000,000 Americans are ex-convicts who have completed their sentences and any periods of probation. Id.
The total population of the United States on September 18, 2002, at 7:58:20 p.m., EDT, was 288,076,459. "U.S. POP-Clock Projection" by the U.S. Census Bureau, Population Division. It was increasing by a net of one person every ten seconds. Id. Even so, the total of inmates, probationers, and ex-convicts, as counted by the slightly less current statistics in The Economist, at 25, aggregated about 3.3% of the entire population, including babies and children too young to be in the criminal justice system.
Nearly one in eight American men of all races, and one in three American black men, has been convicted of a felony. "Too Many Convicts," The Economist, August 10-16, 2002, at 9. One in 20 American men of all races, and one in five American black men, has been incarcerated. Id.
The United Statescounting the federal and state prison systemsincarcerates a higher percentage of the national population than any other nation in the world. The Economist, at 25. Russia's incarceration ratio is second to that of the United States. Id. The incarceration ratio in England, the highest in Europe, is only one-fifth of the ratio in the United States. Id.
Approximately 51% of all current inmates of state prisons and local jails are incarcerated for nonviolent offenses. Paige M. Harrison and Allen J. Beck, Ph. D., "Prisoners in 2001," Bureau of Justice Statistics Bulletin, NJC 1951989, July 2002, at 12. Approximately 80% of all current federal inmates are incarcerated for nonviolent offenses. Id. at p. 14.
An ubiquitous fad these days is baggy, oversized trousers, falling off the hips. The origin of this fad is the prison system, where prisoners are issued too-big trousers when trousers that fit are unavailable. A variation of this fadbaggy, long trunkshas spread to boxers and basketball players, local and national.
The originators of the fad were emulating their friends or role models who were prison inmates. To some extent, the young men who adopt or copy the fad are expressing the same admiration or alliance.
Will the prison population and its admirers and allies reach a critical mass? If so, what will happen?
Exaggerating the dangers of some crimes can be a bonanza for politicians, bureaucrats, and law enforcement officials. The exaggeration prompts legislators at all levels of government to allocate more and more money to the bureaucracies and agencies. The exaggeration likewise prompts legislators, judges, and law enforcement officials to invade and progressively to eliminate the privacy, immunities, *238 and liberties of individual citizens. For instance, hardly more than a vestige remains of the Fourth Amendment, United States Constitution, guarantee against unreasonable searches and seizures. Finally, politicians win votes by creating a menace or a worse menace in the minds of the voters and then "fighting" that menace by legislating or imposing draconian sentences. But what about the costs?
Hale is a drug offender. As of August 2002, 2,349 inmates were serving drug offense sentences exceeding ten years each in the Alabama penitentiary system. Alabama Department of Corrections, Monthly Statistical Report, Demographics and Sentencing (Research, Monitoring & Evaluation, August 2002), p. 7. As of September 30, 2001, the annual cost of incarcerating each inmate in the Alabama penitentiary system was $9,581, the lowest annual cost per inmate in this nation. "Comparison of Alabama Prison System to Other States," American Correctional Association Directory (2002). Even so, and even without any recognition of any increase in the annual cost since September 30, 2001, the annual cost of incarcerating the 2,349 inmates serving drug offense sentences of ten years or longer each in the Alabama penitentiary system is $22,505,769.
Every year this state encounters a budget crisis. The Judicial Branch of government and a number of agencies in the Executive Branch of government are suffering funding shortages, some critical, right now, and will be suffering worse shortages in the near future in the absence of some relief.
I doubt that any politician would be unable to rationalize the life-plus-ten-year sentence in Hale's case and to get some votes in the process. But are the taxpayers really getting their money's worth? Are they getting their money's worth in the hundreds of similar cases? Are we misusing our penitentiary system? Do the other Western nations know something we do not know? Do the public officials in all three branches of our State government owe a duty, as appropriate to their respective constitutional roles, see Article III, § 43, Alabama Constitution of 1901, to reexamine our sentencing laws and their application?